## HARRIET J. GRAVES v. TOWN OF WAITSFIELD.

### October Term, 1906.

Present: TYLER, MUNSON, WATSON, HASELTON, POWERS, and MILES, JJ.

Opinion filed March 11, 1908.

*Towns—Highways and Bridges—Injuries to Travelers—Lia-
bility of Town—Notice—Sufficiency—Evidence—Admissi-
bility—Complaints of Pain—Exceptions—Too General—
Waiver by Failure to Brief—Instructions.*

A notice of a claim for injuries, caused by the alleged insufficiency of
the approach to a highway bridge, which is addressed to designated
persons as selectmen of a specified town, and which states that
plaintiff, "while traveling on the public highway in your town,"
was injured, sufficiently locates the place of the injury as on a
highway in that town.

Where such a notice states that the accident happened on the approach
to a bridge spanning a designated stream, and describes the ap-
proach as narrow, with an embankment on the side where the
accident occurred, but without any sufficient protection to keep
teams from going off on that side, it sufficiently points out the
insufficiency in the bridge, within the requirement of P. S. 4031
that such notice shall "point out in what respect the bridge or
culvert was insufficient or out of repair," which requires no more
than that such notice shall designate the insufficiency with reason-
able certainty.

Such a notice describing the injuries as, "A severe cut and bruise on
the back of my head, and my head otherwise injured. My left
hip was bruised and made sore and lame. I was hurt and made
lame through my chest and bowels," fulfills the requirement of
P. S. 4032 that the notice shall state the part of the body injured,
with the extent and effect of the injury on the health of the person
injured; as that statute does not require the person injured to give
an accurate diagnosis of his bodily injuries, but only to describe
them, and give his understanding of their character.

Where such a notice stated that plaintiff's left hip "was bruised and
made sore and lame," evidence that her hip was black and blue

and bruised was admissible, as the discoloration was only the natural consequence of the injuries described.

Where such a notice stated that plaintiff suffered a severe cut on the back of her head, that her left hip was bruised and made sore, and that she was injured through her chest and bowels, evidence that a physician prescribed certain remedies for her hip and bowels was admissible as against the objection that the notice did not state what the prescriptions were, since the statute does not require the notice to specify the treatment employed.

The testimony of a physician that soon after the accident he found plaintiff in a very excitable condition was harmless to defendant, since the statement was only a general description of plaintiff's condition at the time and did not form the basis of any claim.

In an action for injuries to a traveler, caused by an alleged defective approach to a bridge, in that it was too narrow and without a sufficient guard rail, the testimony of plaintiff's witness that, when he drove along the highway near where the accident occurred, he "did not calculate to get down into the road there to meet any teams," and that if he saw any coming either way he would stop, was not harmful to defendant, as it was only the witness's way of describing the narrowness of the approach, as a part of his description of the place of the accident.

The testimony of plaintiff's witness, that he had seen a man seventy years of age using the horse that was being driven at the time of the accident, was too colorless to be harmful to defendant.

In an action against a town for injuries to a traveler, caused by a defective approach to a highway bridge, evidence regarding plaintiff's complaints of present pain from the injuries described in the notice, and taking medicine therefor, was admissible, without any express allusion thereto in the notice.

Where the notice stated that there was no sufficient railing to protect teams, evidence that the railing was unsound and defective was admissible.

Where the notice described the injuries as a severe cut and bruise on the back of plaintiff's head, evidence that since the accident, but not before, she could not at times collect her faculties and was confused, was admissible to show the severity of the physical injuries to her head, but not to furnish a substantive ground of recovery for disturbance of her mental functions.

Exceptions to the admission of evidence not briefed by the excepting party will not be considered.

A general exception to a specified portion of the charge will not be considered, unless that portion is wholly unsound.

A special exception to a charge will not be extended beyond the precise point to which it refers.

An instruction is to be considered as whole, and its terms construed in harmony with its general tenor.

In an action against a town for injuries to a traveler, caused by a defective approach to a highway bridge, an instruction that it was defendant's duty to keep the bridge reasonably safe for the amount and kind of travel that might fairly be expected to pass over it; that this duty, as affecting defendant's liability to pay damages for injuries caused by defects in the bridge, is not measured by the exercise of ordinary care and diligence on its part in respect of keeping the bridge in repair; that if defendant was chargeable with any fault in respect of this duty the liability attached, if plaintiff's case was otherwise made out; that defendant was liable for accidents and injuries caused by defects existing through its fault, for against such accidents and injuries it was an insurer, "and this, without notice to it, or regardless of the question of neglect," was not rendered erroneous by the quoted phrase, for the word "neglect" was therein used in its ordinary legal sense, and the phrase, taken in connection with what preceded, meant only that defendant's liability was not dependent on whether it had exercised ordinary care in the maintenance of the bridge and its approach.

It is the duty of a town to keep a highway bridge, having a narrow approach with a bank on one side, reasonably safe for the amount and kind of travel that may fairly be expected to pass over it, and the greater the travel the better it should be kept.

In an action against a town for injuries to one riding on the highway, caused by a defective approach to a bridge, an instruction that if the horse was unsafe, and plaintiff's husband, who was driving, knew it, or in the exercise of the prudence of a careful man, ought to have known it, and the vice of the horse contributed to the accident, then the husband was negligent in using the horse, and, if that negligence contributed to the accident, the law would impute his negligence to plaintiff, and defeat recovery, was not erroneous as against the objection that the actual character of the horse was the controlling fact.

CASE for negligence. Plea, the general issue. Trial by jury at the March Term, 1906, Washington County, *Rowell, J.,* presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The exceptions state that:

"The plaintiff introduced one Waterman as a witness, who said he was at the bridge a week or so after the accident, and just stopped and looked it over a little. He was then asked to describe what there was on the side of the road where the team went off, and to describe the bank, and the whole matter there. The defendant objected that the plaintiff had not yet shown that the conditions in respect of superstructures, railings, or fences were the same then as at the time of the accident. The court said that the witness might go on and tell about it and then we would see, and he did, and there the matter ended. The defendant excepted.

It appeared by other testimony that there had been no substantial change in the condition of things there. The same witness was permitted to testify that when he drove along the highway near where the accident was, he didn't calculate to get down into the road there to meet any teams, and that if he saw them coming either way he would stop. This evidence the defendant excepted to. It appeared that one Mr. Ramsey had owned the horse that was being driven at the time of the accident, and one E. A. Fisk testified that he first saw the mare in 1902, and that he had seen Mr. Ramsey use her some; and was then permitted to testify that Mr. Ramsey was seventy years of age, as tending to show that the horse was gentle and docile, and not subject to the balking that the defendant claimed. Defendant objected that the age of the man did not tend to prove the quality of the horse. The testimony was admitted, and the defendant excepted." Subject to defendant's objection that it was not proper evidence under the notice, and under exception, plaintiff's son was allowed to testify that plaintiff, after the accident, complained of pain about the head. Defendant's evidence tended to show that the horse that plaintiff's husband was driving at the time of the accident was not safe; that it was accustomed to back when asked to go ahead; and that at the time of the accident it backed some fifty feet and over the bank. Plaintiff's evidence tended to show the contrary.

*Zed S. Stanton,* and *John W. Gordon* for the defendant.

It was within the plaintiff's power to have pointed out in the notice the particulars of the alleged insufficiency, and this, the Court should hold it was the plaintiff's duty to do. The notice does not in any manner approach the particularity of description held to be good in the case of *Cook* v. *Barton,* 66 Vt. 65, and yet it may reasonably be said that if there was any defect in the railing, or guard in this case, it might have been pointed out just as precisely as were the holes in the highway in *Cook* v. *Barton. Bartlett et ux.* v. *Cabot,* 54 Vt. 242; *Smyth* v. *Bangor,* 72 Me. 249; *Pendleton* v. *Northport,* 80 Me. 598; *Hubbard* v. *Fayette,* 70 Me. 121; *Greenleaf* v. *Norridgewock,* 82 Me. 62; *Mears* v. *Spokane,* 22 Wash. 323; *Regers* v. *O'Ryan,* 116 Mich. 324; *Farnsworth* v. *Mt. Holly,* 63 Vt. 293; *White* v. *Stowe,* 54 Vt. 510; *Noonan* v. *Lawrence,* 130 Mass. 161; *Madden* v. *Springfield,* 131 Mass. 441. The mere statement that the cut and bruise were "severe" is too narrow. *Perry* v. *Putney,* 52 Vt. 533; *Nourse* v. *Victory,* 51 Vt. 275; *Pratt* v. *Sherburne,* 53 Vt. 370. And this defect cannot be supplied by parol. *Underhill* v. *Washington,* 46 Vt. 767; *Wheelock* v. *Hardwick,* 48 Vt. 19.

Even if there were a defect in the approach to this bridge, unless it was the sole culpable cause of the injury, the town is not liable. *Taylor* v. *Woburn,* 130 Mass. 494; *Herr* v. *Lebanon,* 16 L. R. A. 106; *Jackson* v. *Bellevieu,* 30 Wis. 250. If the proximate cause was the vice of the horse in backing the wagon, then the town is not liable even though there were a defect. *Titus* v. *Northbridge,* 97 Mass. 258; *Schaefer* v. *Jackson Township,* 150 Pa. St. 145; *Higgins* v. *Boston,* 148 Mass. 484; *Ritger* v. *Milwaukee,* 99 Wis. 190; *Rowell* v. *Lowell,* 73 Mass. 100. The doctrine of proximate cause is applied to highway cases in this State. "To come within the act, the accident must occur and the injury be sustained while the traveler is passing over the bridge, culvert, or sluice, or that portion of the road which constitutes the approaches to it, so that the insufficiency or want of repair of the structure itself or of its approaches is the direct cause of the injuries sustained." *Ford* v. *Braintree,* 64 Vt. 144. If the proximate cause of the accident was the viciousness of the horse, plaintiff cannot recover. *Doak* v. *Saginaw,*

119 Mich. 680; *Brown* v. *Lawrence,* 38 S. C. 282; *Teater* v. *Seattle,* 10 Wash. 327; *Hungerman* v. *Wheeling,* 46 W. Va. 761; *Abbott* v. *Wolcott,* 48 Vt. 672; *Pillott* v. *Simmons,* 106 Pa. St. 95; *Bitting* v. *Maxatawny,* 177 Pa. St. 213; *Schiellinger* v. *Verona,* 96 Wis. 456.

*J. P. Lamson,* and *J. G. Wing* for the plaintiff.

The notice states that the approach "was narrow, and without any sufficient railing or muniment or guard, or any sufficient protection to prevent teams from going off the approach, and by reason of the insufficiency of the guard, muniment and railing, she was thrown down the embankment." This is a sufficient description of the defect in the approach to the bridge, and fully answers the requirement of the statute. It tells distinctly in what respect the road was unsafe. *Tinkham* v. *Stockbridge,* 64 Vt. 480; *Fassett* v. *Roxbury,* 55 Vt. 552; *Bliss* v. *Whitingham,* 54 Vt. 172.

Evidence that since the accident but not before, she could not at times collect her faculties and was confused, was properly admitted as characterizing the severity of the physical injuries to her head, there being no claim to recover for mental disturbance. *Lynde* v. *Plymouth,* 73 Vt. 216; *Reynolds* v. *Burlington,* 52 Vt. 300.

POWERS, J.   This is an action wherein the plaintiff seeks to recover damages for injuries received through the alleged insufficiency of the approach to a highway bridge in the defendant town. It appeared at the trial, that a written notice was seasonably given to the selectmen of the town, but when it was offered in evidence by the plaintiff, it was objected to on several grounds, and the first exception raises the question of its sufficiency. We can do no better than to quote this notice at length:

"To Robert McAllister, Clarence Richardson and Fred Wilder, Selectmen of the Town of Waitsfield, in the County of Washington,

Sirs:—I hereby notify you that I shall claim damages of said town of Waitsfield in consequence of an accident which happened or occurred to me on the 22nd day of September,

1903, on account of the insufficiency of the highway, while travelling on the public highway in your town on the road leading from Warren village to Waitsfield, on the approach of the bridge spanning a stream known as Somerville Brook; said bridge being known as the Poland Bridge, and being between the dwelling-house of Oscar Poland, on the Warren side of said Somerville Brook, and Hiram Stoddard's house on the Waitsfield side of said Somerville Brook, and being the only bridge between said houses of said Poland and said Stoddard. I had passed over said bridge going toward Waitsfield, and was on the approach of said bridge, when at a distance of 12 or 14 feet from the end of said bridge, going toward Waitsfield, when said accident occurred. The road where said accident happened was narrow and the bank on the right hand side of said road, going toward Waitsfield, was about seven feet high and about two feet from the travel of the road; that the place where the accident happened was the approach to said Poland Bridge on the end leading toward Waitsfield; that the insufficiency of said approach was, it was narrow and without any sufficient railing or muniment or guard, or any sufficient protection to prevent teams from going off said approach on said right hand side of said approach going toward Waitsfield as aforesaid, and by reason of the insufficiency of the guard or railing or muniment on the right hand side of said approach to said bridge as aforesaid, my team, consisting of one horse and a single wagon with top, with myself and wife in the wagon, was thrown down over the embankment to the right hand side of said approach to said bridge, which approach it was the duty of the town to keep in repair; by reason of which I received the following injuries: A severe cut and bruise on the back of my head and my head was otherwise injured; my left hip was bruised and made sore and lame. I was hurt and made lame through my chest and bowels; and I was badly jarred and shaken up, and bruised so that my whole body was badly affected and my nervous system was injured; that I was rendered unable to perform any labor for several days after the said injuries, and am still unable to perform manual work of any kind. And you are hereby notified that I do and shall claim to recover damages of said town of Waitsfield for my said injuries and expenses of my cure, and

for medical attendance and all expenses consequent upon the same. Waitsfield, Vt., October 10th, 1903.

HARRIET J. GRAVES."

The defendant's objections to this notice, eleven in number, challenge its sufficiency in three respects: (1) That it does not sufficiently locate the place of accident as on a highway which the defendant town was bound to keep in repair; (2) that it does not sufficiently point out the insufficiency of the approach; and (3) that it does not sufficiently describe the injuries received.

The court below held the notice sufficient as to the first two points, and sufficient as to the injuries down to and including the word "bowels," but insufficient as to all injuries specified after that word, and admitted it accordingly, to which the defendant excepted.

The notice sufficiently locates the place of injury as on a public highway which the town was required to keep in repair. The language is "while traveling on the public highway in your town"; and the notice is addressed to certain persons as selectmen of the town of Waitsfield. This is equivalent to a statement that the highway in question was in that town; which is all that is required, as was recently held in *Skinner* v. *Weathersfield,* 78 Vt. 410, 63 Atl. 142.

Nor was there error in the ruling as to the character of the insufficiency. The notice describes the approach as narrow, with an embankment on the side where the accident occurred, without any sufficient protection to keep teams from going off on that side. The statute requires that the notice shall point out in what respect the bridge is insufficient or out of repair. This provision goes no farther than to require the notice to designate the insufficiency which caused the accident with reasonable particularity and certainty. This the notice in question does, for it points out the insufficient railing as the cause of the accident, with as much particularity as did the notice in *Bliss* v. *Whitingham,* 54 Vt. 172. Indeed, in this respect, it is quite like the notice in *Tinkham* v. *Stockbridge,* 64 Vt. 480, 24 Atl. 761, which was held to be sufficient.

The court was correct, too, in admitting so much of the notice describing the injuries as was received in evidence. The requirement of the statute is that the notice shall state the part

of the body injured, with the extent and effect upon the health of the person injured. A person is not required to give an accurate diagnosis of his bodily hurt, but to describe it and give its character as he understands it. *Nourse* v. *Victory*, 51 Vt. 275; *Perry* v. *Putney*, 52 Vt. 533. . The description in this notice as to the injuries to the head is much like that in *Lynds* v. *Plymouth*, 73 Vt. 216, 50 Atl. 1083; that of the injury to the hip like that in *Perry* v. *Putney*, *supra*; and that of the injury to the chest and bowels like that in *Willard* v. *Sherburne*, 59 Vt. 361, 8 Atl. 735.

Subject to the defendant's exception, the plaintiff was permitted to show that her left hip was black and blue, and bruised. The only objection to the admissibility of this evidence was that it was not covered by the notice. But the bruise was specified, and the discoloration was so much a natural consequence and condition of such an injury as to make evidence of it admissible.

The plaintiff was allowed, subject to exception, to show that a doctor prescribed remedies for her hip and bowels, and what these remedies were. The only objection made was that there was nothing said in the notice or declaration about what these prescriptions were. It was not necessary. The statute does not go that far. That injuries will require treatment and the application of appropriate remedies is a matter of common knowledge; and the statute does not require the notice to specify those employed in a given case.

The testimony of Dr. Howe that he found the plaintiff in a very excitable condition soon after the accident was objected to solely on the ground that it was inadmissible under the notice. It does not appear from the exceptions that this was anything more than a general description of her condition at the time, or that it formed the basis of any claim on the part of the plaintiff. It was a condition naturally to be expected as a result of such an accident as this appears to have been, and could not have affected the result of the trial.

The testimony of the witness Waterman as to his habit when approaching the place of the accident was not harmful. The case does not show that it was objected to before it was received, or that the court had an opportunity to rule upon it in advance. It was the familiar case of an improper answer to a

proper question. But at most, it was only the witness' way of describing the narrowness of the road as a part of the description of the place of the accident which he was giving. The width of the road at that point was a material consideration, for it bore directly upon the character and quality of the railing required properly to protect those who might have occasion to pass a team there.

The testimony regarding the age of Mr. Ramsey, who was shown to have owned and driven the horse which the plaintiff was using at the time, was entirely too colorless to have been harmful.

The testimony of the plaintiff's son regarding his mother's complaints as to pain about the head was properly received. Pain is such a natural result of such injuries as were properly described in this notice as to make evidence of it admissible, without expressly alluding to it in the notice. The same may be said of the testimony of this witness relative to his mother's taking medicine.

Subject to the defendant's objection and exception, the plaintiff was allowed to show that the railing at the point of the accident was unsound and defective. There is nothing said in the notice about unsoundness, but the notice does allege that the railing was insufficient; and this is specified as a part of the insufficiency of the highway. This made it proper to show in what respect the railing was not of the character or quality required. Whether it was insufficient by reason of its lack of size, improper construction, or unsound condition was properly shown on the general question of the insufficiency of the approach,—without regard to its being so particularly specified in the notice. The plaintiff was allowed, under exception, to show that since the accident, but not before, she could not, at times, collect her faculties, and was confused. This evidence was received solely on the question of the severity of the physical injuries to the head, and the jury was carefully instructed to limit its use to that point. It was properly admitted for the purpose indicated. It was as legitimate for this purpose to show that the injury was of such severity as to affect her mental functions as it would be to show its effect upon her physical functions,—not as furnishing a substantive ground of recovery,

but as showing the nature and extent of her physical hurt. *Simkins* v. *Eddie,* 56 Vt. 612.

Several other exceptions were taken to the admissibility of evidence, but they are not covered by the defendant's brief, and so are not considered.

The court charged the jury as follows: "It was the duty of the town to keep this bridge reasonably safe for the amount and kind of travel that might fairly be expected to pass over it, and so that travelers might be reasonably safe from the consequences of such accidents as might justly be expected occasionally to happen there. This duty, as affecting the town's liability to pay damages for injuries occasioned by defects in the bridge, is not measured by the exercise of ordinary care and diligence on the part of the town in respect of keeping the bridge in repair; nor, on the other hand, is the town liable absolutely as an insurer for damages resulting by reason of its insufficiency and want of repair. The statute imposed the duty of keeping this bridge in good and sufficient repair. If the town is chargeable with any fault in respect of this duty, the liability attaches, if the plaintiff's case is otherwise made out, and the town is liable for accidents and injuries caused by reason of defects existing therein through the fault of the town, for against *such* accidents and injuries the town is an insurer; and this, without notice to it, or regardless of the question of neglect. If the plaintiff, being free from fault on her part that contributed thereto, or if her husband was free from fault on his part that the law will impute to the plaintiff, if in the absence of any such fault, the plaintiff received injury that was the combined result of such an accident as might justly be expected to happen there and the insufficiency or want of repair of the bridge, the town is liable."

To this, the defendant excepted generally, and specially to what is therein said about the town's liability if chargeable with any fault in respect of its duty. It ought not to be necessary for us to say that the general exception will not be considered. We may observe in passing, however, that the language used, (except perhaps the clause hereinafter alluded to), is well within the previous holdings of this Court, as will be seen from an examination of *Kelsey* v. *Glover,* 15 Vt. 714; *Prindle* v. *Fletcher,* 39 Vt. 255, and *Hunt* v. *Pownal,* 9 Vt. 411. Nor is the special

exception to be extended beyond the precise point to which it refers. Referring to *Prindle* v. *Fletcher, supra,* we find Judge Barrett using this language: ''The requirement is, that the town shall keep its highways in good and sufficient repair. This prescribes its duty. If the town is chargeable with any fault in respect to this duty, then the liability attaches. It was not the design of the statute to require impossibilities of the town, and to make it the absolute insurer against all accidents and injuries caused by defects in highways. But it was designed to hold the town to insure against accidents and injuries caused by defects existing through any fault of the town.'' So confining the exception to the very point raised—the liability of the town if chargeable with any fault—we find no error. And, were we to construe this exception, as we are asked to do, as broad enough to cover the words ''and this, without notice to it or regardless of the question of neglect,'' the result would be the same. For, however it might be if this clause stood alone, it is apparent from the language used in the previous parts of the charge quoted, that the court used the word ''neglect'' in its ordinary legal sense, and intended to instruct the jury, as it had just before done, that the liability of the town was not to be made to depend upon the question whether or not it had exercised ordinary care in the maintenance of this bridge and its approach. Any other construction would make this expression entirely out of harmony with the paragraph quoted, which taken as a whole must have given the jury a correct understanding of the law. It appeared that the bridge in question was a part of the river road between Waitsfield and Warren, and that it was a road of considerable travel. The court charged that the town was bound to provide a bridge sufficient only for the travel that passed over it, or might be expected to pass over it; that the greater the travel, the better it should have been kept; but whether the travel was much or little, it was the duty of the town to keep it in good and sufficient repair for the amount and kind of travel that did pass over it or that might fairly be expected to pass over it. The defendant excepted to the expression ''the greater the travel, the better it should have been kept.'' In determining the correctness of this instruction, it must be borne in mind that the court was talking about a narrow approach, with a bank on one side, unprotected by a sufficient railing. It

seems plain that the amount and kind of travel to be expected there was important in determining the character of the guard required to make it safe. What would have been sufficient to meet the requirements of such an approach on an unfrequented highway would or might be utterly inadequate on a main thoroughfare-over which much heavy teaming was to be done or expected. This has been the accepted doctrine of this Court, recognized in *Kelsey* v. *Glover,* 15 Vt. 708, *Clark* v. *Corinth,* 41 Vt. 464, and *Hodge* v. *Bennington,* 43 Vt. 450. Besides, the charge here, as in case of the point last referred to, is to be taken as a whole,—*Patch Mfg. Co.* v. *Protection Lodge,* 77 Vt. at p. 325, 60 Atl. 74;—and when so taken, there is no error.

The testimony of the defendant tended to show that the horse which the plaintiff was using was unsafe, on account of a vice which caused this accident. The court charged that if the horse was unsafe, and Mr. Graves (the plaintiff's husband and driver) knew it, or in the exercise of the care and prudence of a careful and prudent man ought to have known it, and that vice of the horse contributed to the accident, then Mr. Graves was guilty of negligence in using it, and if that negligence contributed to the accident, the law would impute his negligence in this behalf to the plaintiff and defeat recovery. To this the defendant excepted, claiming that the actual character of the horse was the controlling fact in this behalf, and not what Mr. Graves knew or ought to have known about it. The rule given the jury was correct under our decisions. *Fletcher* v. *Barnet,* 43 Vt. 192; *Hodge* v. *Bennington,* 43 Vt. 451.

The exception taken to that part of the charge which allowed the jury to consider the evidence of mental disturbance in determining the extent of the physical injury to the plaintiff has been sufficiently discussed under the exception to the admissibility of the evidence.

*Judgment affirmed.*