# CITY OF MARYVILLE v. McCONKEY (two cases).
## No. 1.

Eastern Section. April 13, 1935.

Petition for Certiorari denied by Supreme Court, January 15, 1936.

Gamble, Goddard & Gamble, of Maryville, for plaintiff in error.
Kramer & Kramer, of Maryville, for defendants in error.

McAMIS, J. On May 23, 1931, Mrs. M. R. McConkey stepped into a cavity in a grass plot between the sidewalk and paved street in the city of Maryville, caused by the decaying of a stump. She sued the city for personal injuries, and, upon the trial of the case before the court and jury, obtained a verdict and judgment in the amount of $2,500. Her husband, M. R. McConkey, sued for damages for loss of service, etc., and obtained a recovery of $250. The cases were tried jointly.

The city of Maryville has appealed in error from both judgments, and has assigned thirty-three grounds of error. They will be discussed in the sequence which seems most logical rather than in the order of their statement in the brief, but it is impractical and unnecessary to discuss each in detail.

Within 90 days after her alleged injury, Mrs. McConkey addressed and mailed by registered mail to the mayor of the city the following letter:

"Maryville, Tennessee, August 20, 1931. "City of Maryville, Maryville, Tennessee.

"Gentlemen: I desire to give you notice that on the 23rd day of May, 1931, I was sincerely injured when I fell into a hole on the north side of Main Street almost directly in front of the building occupied by Mr. O. F. Allison. This accident occurred about 8:30 in the evening.

"As a result of the accident I suffered injuries to my left arm, lower limbs, back and sides and probably internal injuries.

"I am giving you this notice in order to protect myself in any rights I may have against the City of Maryville.

"Sincerely yours,"

The sufficiency of the foregoing notice to the city is sharply challenged, and we proceed at once to dispose of that question.

Section 8596 of the 1932 Code provides as follows:

"No suit shall be brought against any municipal corporation, on account of injuries received by person or property on account of the negligent condition of any street, alley, sidewalk, or highway of such municipality, unless within ninety days after such injury to the person or property has been inflicted, a written notice shall be served upon the mayor or manager of said municipality, stating the time and place where said injury was received and the general nature of injury inflicted."

We think the notice not open to attack as to the mode of giving it. While the copy of the letter found in the record is addressed to "City of Maryville" instead of to the mayor, the return receipt is signed by A. R. McCammon (by agent), who was then mayor of the city, and, for that reason, we infer that it was inclosed in an envelope addressed to him as mayor. Hence it is unnecessary to de-

cide whether a communication addressed to the city instead of to its mayor or manager, if in fact received by the mayor, is sufficient.

In addition to prescribing the mode by which, and time within which, the notice must be given, the statute prescribes that it shall state (a) when the injury occurred; (b) the place where the injury was received; and (c) the general nature of the injury inflicted. The notice is sufficiently definite as to time, but it is insisted that it is insufficient as to the place where the injury was received and as to the nature of the injuries sustained.

■■ The proof shows that the hole was in the grass plot between the sidewalk and street on the north side of the street. Fronting on that side of the street is the property of Dr. A. M. Gamble, on which is located a building occupied by O. F. Allison, a paper hanger. The width of the building is not shown in proof, but, from the map filed in the record, according to scale, it is approximately 20 or 21 feet in width. The distance from the west side of the building over to the property line is about 10 feet, according to scale. This space was vacant of buildings. The hole into which Mrs. McConkey stepped was about 3 feet west of said property line if extended into the street, and is approximately on a line with the east side of the building on the adjoining property, lacking perhaps a foot or two.

Thus it appears that the hole was 12 or 13 feet west of the nearest point immediately in front of "the building occupied by Mr. O. F. Allison."

The rule, as established in Tennessee, is that, if the description of the place is such that the municipal authorities could, by the exercise of reasonable diligence, have found the exact spot, the notice is sufficient. Hill v. City of Chattanooga, 14 Tenn. App., 456. In that case the notice described the place of accident as "along East Thirty Fourth Street at or near the intersection of said street with Sixth Avenue." The court held the description of the place, accompanied by a description of the defect, sufficient, being of opinion that a person of reasonable diligence could have found the place.

We do not understand it to be seriously contended that the notice is insufficient because the Allison house is not definitely located, but rather that the spot is not sufficiently located with reference to said house. But whether we are correct in this or not, it is held by the decided weight of authority that the description may be by reference to a particular building. 43 C. J., 1199; 18 Ann. Cas., 996, where many cases on the subject are collected and digested.

Under these holdings, the notice was not defective because the hole was located 12 or 13 feet west of the Allison building and 2 or 3 feet west of the property line. We think the city could have located the spot by the exercise of reasonable diligence, since it does not appear that there were any other similar defects in that locality; the

one into which Mrs. McConkey stepped being 12 inches or more in diameter and several inches deep. We cannot assume that there were other holes in the same vicinity which would have caused any uncertainty as to where she was injured. 18 Ann. Cas., 996, citing Town of Waterford v. Elson (C. C. A.), 149 F., 91.

It is to be observed that the notice does not state that the place of injury was "immediately" in front of the Allison place, but that it was "almost directly in front" of it. The city was therefore not misled, and we think a person of ordinary diligence would have pursued the search as much as 12 or 13 feet to the side of the Allison building in view of the use of the words "*almost* directly in front of the building occupied by Mr. O. F. Allison." (Italics ours.)

 The question next presented is, Does the notice set forth "the general nature of the injury inflicted?"

This question has been considered in only one reported case in Tennessee, and has caused us much concern. In Hilson v. City of Memphis, 142 Tenn., 620, 221 S. W., 851, 853, the contention was made and sustained that a notice which merely stated that claimant "was badly hurt" was insufficient to describe the general nature of the injury inflicted. In that case the court reviewed cases from other jurisdictions dealing with the question. The cases cited holding the notices insufficient were two cases from Maine where a statute similar to the Tennessee statute was under review, and the Michigan case of Tattan v. City of Detroit, 128 Mich., 650, 87 N. W., 894. In none of these cases, nor in the Hilson Case, supra, did the notice state what part of the body was injured, whereas, in this case, there is a full statement of the parts of the body alleged to have been injured. These cases are therefore distinguishable from the case at bar. In Goodwin v. Gardiner, 84 Me., 278, 24 A., 846, cited in the Hilson Case, the court held that the notice should be more than a bare statement that a bodily injury was received, and further said, "It would have been more natural for the plaintiff, if really injured severely, to state how and to what extent the injury affected him, whether upon the head or back, upon his arms or legs, and whether general or particular," and intimated that, if the notice had so described the injuries, it would have been sufficient.

Cases holding various phraseology sufficient are cited and discussed in the opinion in the Hilson Case, and it would serve no good purpose to do more than refer to them as there cited.

We recognize the rule that the statute is to be strictly construed (City of Knoxville v. Felding, 153 Tenn., 586, 285 S. W., 47), but the statute does not require that the notice state the exact injury sustained, but only requires that the "general nature" of the injury be stated, indicating a legislative intent not to require that the nature of the injury be stated with the same exactitude as is required as to time and place of injury.

In the Vermont case of Graves v. Waitsfield, 81 Vt., 84, 69 A., 137, cited in the Hilson Case, supra, it was held that the statute did not require an accurate diagnosis of one's injuries to be given, but is satisfied by a description of their general character as one understands them.

While the notice here involved does not state whether the limbs and parts of the body mentioned were bruised, broken, or how they were affected, it does state that claimant was "sincerely" (meaning severely) injured, and this, taken in conjunction with a full statement of where the injuries were sustained and that they resulted from a fall, we think constitutes a statement of the general nature of the injuries and complies with the statute. Volume 6, McQuillan on Municipal Corp., section 2899.

■ It is next insisted that the notice is insufficient because it fails to state that the injury occurred in the city of Maryville. We think it was clearly to be inferred that the accident happened inside the city. The notice expressly states that it is given to conserve any rights claimant had against the city of Maryville because of her alleged injuries. If it had not occurred within the city, of course, she would have had no action or claim against it. The notice in Hill v. City of Chattanooga, 14 Tenn. App., 456, 457, did not state that the accident happened within the city, but notwithstanding this omission was held sufficient, although it is not shown that this question was raised in that case.

Other criticisms leveled at the notice under the assignment touching its sufficiency are not well made, and the assignment is overruled.

■ ■ The facts of the case as to how the accident occurred are without dispute. On the evening of May 23, 1931, Mrs. McConkey parked her car alongside the curb on the north side of Main street, where she and her companion got out of the car. She returned to the car a little after dark at about 8:30 o'clock. Intending to again enter the car, she stepped with her right foot from the sidewalk into the grass plot between the sidewalk and the curb and then advancing her left foot stepped into a hole about 12 inches in diameter and of irregular depth ranging to about 6 inches, caused by the rotting out of a tree stump, as stated above.

Whether such a cavity in the grass plot between the sidewalk and street, where pedestrians had habitually walked both during the day and at night since the street was established, was dangerous, constituted a question of fact for the jury, and the fact that it was caused by the rotting out of a stump afforded an inference which, along with testimony of witnesses who saw it theretofore, constituted material evidence that it existed for such a length of time as to constitute constructive notice to the city of its existence. It was a matter known to the jury that wood does not rot with such rapidity that the

condition described could have existed such a short time that the city could not have discovered it by the exercise of reasonable care. That question was likewise for the jury. City of Nashville v. Nevin, 12 Tenn. App., 336, 337.

■ It is also insisted that Mrs. McConkey was guilty ·of such contributory negligence as would bar a recovery. We cannot say, as a matter of law, that Mrs. McConkey was guilty of contributory negligence under the facts of this case.

■ A pedestrian is not required to keep his eye on the pavement at all times (Mayor, etc., of Knoxville v. Cain, 128 Tenn., 250, 255, 159 S. W., 1084, Ann. Cas., 1915B, 762) ; and it is not negligence to fail to look for danger which, under the circumstances, the injured party had no reason to apprehend (45 ·C. J., 950; Ellis v. Cotton Oil Co., 3 Higgins [3 Tenn. Civ. App.], 642).

■ Mrs. McConkey had a right to assume that this strip of grass between the sidewalk and pavement was in an ordinarily good condition, and to regulate her conduct upon such assumption. See opinion by the Middle section of this court in City Water Co. v. Cavin, decided April 13, 1935, at Knoxville, citing section 1698, Dillon on Municipal Corp.

The assignments to the effect there is no evidence to support the verdict and judgment are accordingly overruled.

■ By the eighth assignment it is insisted the court erred in not sustaining the objection of defendant to testimony of her physician detailing complaints by, or subjective symptoms of, Mrs. Mc-Conkey. Dr. Carson was regularly called to administer treatment to Mrs. McConkey, and testimony as to such complaints and subjective symptoms was competent. Gulf Refining Co. v. Frazier, 15 Tenn. App., 662, 689.

■ The ninth assignment of error complains of the admission of similar testimony by Dr. McCulloch, who was introduced as a witness by defendant. Dr. McCulloch was not Mrs. McConkey's regular physician, and his testimony as to her complaints and subjective symptoms would not have been competent, but it appears that counsel for defendant in direct examination of Dr. McCulloch, in asking an hypothetical question, asked him to base his answer, among other things, ''upon the history of Mrs. McConkey as she gave it'' to him. On cross-examination, counsel were permitted to ask the following question:

''In giving the history of the accident and trouble following it, she told of suffering from soreness and pains in the abdomen immediately after the accident, didn't she?

''A. I think she did. I know she claimed she had an injury to the abdomen, left leg, left arm and side of the head.''

Since counsel for defendant included the history given by Mrs.

McConkey as a part of the premise for the hypothetical question upon which Dr. McCulloch gave his opinion, counsel for plaintiff were properly permitted to elicit what her complaints were upon which he, in part, based his opinion. The ninth assignment is therefore overruled.

Under the tenth assignment of error, the insistence is made that the court erroneously permitted Dr. Carson to testify that the operation was probably made necessary by the fall; the argument being that such testimony is conjectural and speculative and invades the province of the jury.

There is material evidence, when viewed in the light most favorable to the successful parties below, that after the accident Mrs. McConkey became nauseated and the next day suffered with pain in her abdomen, which continued until she was operated upon in October, 1931; that she was in bed for about three weeks after the accident, and has never been able to do her regular housework or to clerk in a store as she had done previous to the accident.

When she was operated upon by Dr. Carson in October, 1931, tubercles were discovered in the peritoneum, and there is medical evidence to the effect that, because of lowered vitality, probably resulting from the injury, the latent tubercular germs in the peritoneum became active, and that therefore the operation was probably made necessary as a result of the accident.

This testimony was competent, in view of the circumstance that immediately after the accident Mrs. McConkey was nauseated and suffered pain in the abdomen until after the operation, and that she received relief from such pain after the operation. It was for the jury to say whether the operation was in fact made necessary by the fall (Gannon v. Crichlow, 13 Tenn. App., 281, citing cases on the subject), but it was competent for Dr. Carson, who was familiar with Mrs. McConkey's condition of health both before and after the fall, to express his opinion as to what probably made the operation necessary.

"As to the cause of the physical condition of a person, where in issue, the usual difficulty lies in determining whether the subject, in the particular case, is properly one for the admission of expert testimony. But in the great number of cases, it has been held that, under the particular facts, expert opinion should be allowed and is permissible. Probably the majority of medical experts who are called for the purpose of rendering an opinion as to causation have either attended or examined the person respecting whom their opinion is sought, and there seems to be no question, generally speaking, but that an opinion as to the cause of death or of a particular physical condition based on knowledge so acquired is admissible. Expert opinion evidence as to cause of death or of a particular physical condition

has been admitted in many cases wherein it thus appeared that the expert had attended the person in question during his illness, or examined the remains after death.'' Volume 3, Jones on Ev., section 1346, p. 2460 et seq.

In Mayor, etc., of Knoxville v. Klasing, 111 Tenn., 134, 76 S. W., 814, it was held that, from the very nature of the case, it must be a matter of expert opinion as to what is the cause or origin of disease, and the testimony of physicians is the most reliable evidence on that point. The cause of illness was the sole issue in that case.

The admission of the testimony of the attending physician as to the cause and origin of an illness is by way of exception to the general rule established in the leading case of Cumberland Tel. & Tel. Co. v. Peacher Mill Co., 129 Tenn., 374, 164 S. W., 1145, L. R. A., 1915A, 1045, to the effect that experts will not be permitted to testify what probably caused a given condition where that is the issue to be tried and determined by the jury.

In Camp v. Ristine, 101 Tenn., 534, 47 S. W., 1098, the court held admissible the testimony of physicians as to the value of professional services of another physician and in the Cumberland Telephone Case, supra, the court recognized that there are exceptions to the general rule growing out of necessity or compelling convenience.

We are cited to the case of Sanders v. Blue Ridge Glass Corporation, 161 Tenn., 535, 541, 33 S. W. (2d), 84, 85; but in that case the court did not undertake to distinguish the testimony of a physician as to the cause of an illness from that of experts generally on the question of cause and effect. However, the opinion states that testimony of a physician that a blow would probably make an abnormal heart worse was ''expert testimony sustaining the opinion or finding of the chancellor that the injury aggravated the already abnormal condition of petitioner's heart.'' As we construe the opinion, the court did no more than quote the general rule that experts will not be permitted to give their opinion upon the very question at issue, without intending to overrule the distinction, observed in the Klasing Case, supra, between expert testimony generally and that of a physician who has attended the patient over a long period of time, and is therefore 'in better position than the jury could possibly be to determine the cause of an illness, even with the most accurate and minute description of his condition which it would be possible for the doctor to give in testimony. The intricacies of the human system and anatomy, as well as the science of medicine and surgery generally, are outside the range of experience and knowledge of the average person, and the subject is of such nature that, without special training and experience, the average individual could not make intelligent observations or draw correct conclusions, and upon that theory (22 C. J., 498, sec. 594) it is often necessary to the at-

tainment of justice and a clear understanding of the subject that such expert testimony be admitted, although the admission of such testimony should be made to depend upon the particular facts of each case.

As to the probability of causation as expressed by expert witnesses, see volume 3, Jones on Evidence, sec. 1346, p. 2460 et seq. It would seem to require no authority, however, for holding such evidence competent, for it would be no more an invasion of the province of the jury for an expert to say that in his opinion a given condition ''probably'' had a particular cause than to make the positive statement that in his opinion it was traceable to such cause.

We conclude that there was no error in the admission of this testimony, and the tenth assignment of error is overruled.

Assignments 4, 5, 6, and 7 assert that there was a fatal variance between the injuries described in the notice and the injuries set up in the declaration and the injuries proven at the trial. Assignment 7 alleges error in the admission of testimony, over the objection of defendant, to the effect that Mrs. McConkey's hearing was impaired. The contention is made that such an injury was not covered by the notice. Assignment 15 complains that the verdict is excessive. These assignments will all be jointly considered and disposed of.

In view of the fact that, at the time the notice was given, at the end of the 90 days allowed by statute, Mrs. McConkey had not been operated upon and did not know the full extent or nature of her injuries sustained internally, it was proper to admit evidence of tubercular peritonitis, resulting, according to plaintiffs' theory, from the fall, under the statement of the notice that she probably sustained internal injuries. It is the commonly accepted meaning of ''internal injuries'' that an injury to or in the abdomen is indicated.

However, we are of opinion the notice was not sufficiently broad to cover impairment of hearing or other injury to the head, and that it was error to admit such evidence over the objection of defendant. There is no reference to any such injury either in the notice or in the declaration.

This alleged impairment of hearing was not particularly emphasized, but, if the judgment is to be sustained, the court is required to fix a remittitur of an amount sufficient to offset any prejudice reasonably resulting from the erroneous admission of evidence touching an injury not covered by the notice. In order to obviate the expense of another trial of the case and at the same time fully protect the city from the effects of the error complained of, a remittitur of $700 will be suggested in the case of Mrs. McConkey and $50 in the case of M. R. McConkey, and, if accepted, judgments will be entered here for the remainder of the respective judgments below. Branch v. Bass, 5 Sneed, 366. The court feels that by so ordering

530

remittiturs in the amounts indicated substantial justice will have been done both parties.

If remittiturs are accepted, the costs of appeal will be paid two-thirds by defendant and surety and one-third by plaintiffs, and costs below will remain as there taxed. If the remittiturs are not accepted, both cases will be reversed and remanded for a new trial, with costs of appeal and accrued costs below taxed to defendants in error.