JOHN VERNON JAMES, Plaintiff-in-Error, v.
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY,
Tennessee, Defendant-in-Error.
—404 S.W.(2d) 249.

Middle Section. February 25, 1966.

Certiorari Denied by Supreme Court June 6, 1966.

George E. Barrett, Elizabeth R. Post, Nashville, for plaintiff in error.

Stephenson, Lackey & Holman, Nashville, for defendant in error.

## THE CASE

SHRIVER, J. This is a suit to recover for personal injuries received by plaintiff when he slipped on ice and snow on a sidewalk and fell into a water meter box on Fatherland Street in Nashville. Among other things, the declaration alleges as follows:

"Plaintiff would show that on or about February 26, 1963, at approximately 9 o'clock or 9:30 o'clock a.m., he was lawfully walking in a westerly direction on the sidewalk adjacent to the south side of Fatherland Street between the 800 and 900 block, when he slipped into a water meter hole in the sidewalk on which the cover was tilted and left in a state of disrepair. Plaintiff would further show that this hole was

not noticeable to him because of snow having covered it and the surrounding sidewalk. Upon stepping into said hole, plaintiff fell and was seriously and permanently injured, breaking the heel of his left foot so as to be totally disabled temporarily, to require hospitalization from February 26, to March 1, 1963, and to necessitate an operation in which a Steinmann pin was inserted to hold the bone and a plaster cast was used to immobilize the foot and the pin for several months.''

The case was tried in the First Circuit Court of Davidson County with a jury and, at the close of plaintiff's evidence, defendant moved the Court for peremptory instructions in its favor which motion was overruled. However, at this point the defendant rested without putting on any proof, and renewed its motion which the Court then granted instructing the jury to return a verdict in favor of the defendant.

The record indicates that the Trial Judge based his action on two grounds: (1) there was no evidence to support a verdict in favor of plaintiff, and (2) that the proof showed that the plaintiff was guilty of contributory negligence which barred his recovery.

It appears that the Court expressly refused to rule on a third ground of the motion, to wit, that the statutory notice given defendant was defective. However, the judgment as drawn seems to include this as one of the grounds.

Plaintiff appealed in error and has assigned certain errors all of which go to the alleged erroneous action of the Trial Judge in directing a verdict for the defendant.

## THE PROOF

It was stipulated that the house at 800 Fatherland Street was torn down in 1958 and that the meter was removed from the box located in the sidewalk in front of this house in January 1959 leaving the empty meter box there.

Plaintiff testified that he was 76 years old; was living in retirement at 820 Fatherland Street; that he frequently walked down the street to a grocery at 7th and Fatherland; that his most recent trip along this sidewalk prior to this accident was about three days before; that on February 26, 1963 he was proceeding along the sidewalk toward the grocery; the sun was shining but there was snow and ice on the sidewalk and, as he neared the meter box in question, his foot slipped on the snow and ice and went into the meter box and the heavy metal top to the box fell in on his foot severely injuring him.

On cross-examination there was some confusion in plaintiff's testimony as to whether the meter box had been left open without a top some time previously, and that he had noticed this fact. This seems to have been the impression he left in his discovery deposition taken about a year before the trial, but, when asked about this on cross-examination at the trial, he stated that he didn't remember making the statement that the meter box was left open without a top because it did have a top on it at the time he fell and was injured, and, furthermore, that it was covered with ice and snow. It seems clear from his testimony that he didn't step on the meter box top but slipped on the ice and his foot went into the hole. For example, he testified:

"A. It was covered with ice. My foot broke the ice when it slipped up to it.

Q. The hole was covered with ice?

A. Yeah, ice and snow."

At another point he testified:

"A. I don't remember mentioning that there wasn't any top on it.

Q. I thought you said—I guess I misunderstood you, I thought you said it didn't have any top on it at all.

A. No, I don't think I would have meant it that way, because there was a top on it, and I can't tell how long it had been on it, but it was—it was on it when my foot slipped in it.

Q. I see."

Mr. Herschel L. Carter, testified for plaintiff and recounted the incident when plaintiff was injured;

"Q. Would you describe to the Court what you saw when you got to the scene?

A. Well, when I got up there, the water meter, there was a cover on it, and his foot had slipped under there, and the southeast corner, this side of the brick was gone, and there was two bricks on this side was slipped down in the hole, and the cover was laying down on his left ankle or his foot.

Q. Now where were these bricks? You say there were bricks laying in the hole and where had they come from?

A. Well, it looked like they came from the side, from where the cover was resting on."

Mrs. Belva Hooper who had lived at 812 Fatherland Street since 1949, when asked if she had had occasion to notice the water meter box at 800 Fatherland Street, answered:

"A. Yes, ma'am, it's been in a bad condition—I've noticed it since '59 and '60, that it was—looked like it was worn and sunk in, and the lid was bad. If you just step on it a little bit, why you know you would just go on down in it.

Q. Did you walk past it yourself?

A. Yes, ma'am, I would always go around it, because it looked like it was just ready to fall in, and specially when the snow was on the ground, why I'd always walk out in the street. Of course I know Mr. James couldn't do that, because he was older."

On cross-examination she stated:

"Well, I stepped on it and it seemed loose, and from that I always walked out in the street."

She was further asked if the hole had always had a top on it and she stated:

"Well, it had a top, but the top was bad, it was loose, looked like it was just laid up there, didn't look like it was fastened on, just laid up there."

## CONCLUSIONS OF LAW AND FACT

A leading case in Tennessee dealing with the liability of a municipality for injuries to a pedestrian by reason of defects in a street or sidewalk, is, City of Maryville v. McConkey, 19 Tenn.App. 520, 90 S.W.(2d) 951, where, among other things, the Court said:

"Whether such a cavity in the grass plot between the sidewalk and street, where pedestrians had habitually walked both during the day and at night since the street was established, was dangerous, constituted a question of fact for the jury, and the fact that it was caused by the rotting out of a stump afforded an inference which, along with testimony of witnesses who saw it theretofore, constituted material evidence that it existed for such a length of time as to constitute constructive notice to the city of its existence. It was a matter known to the jury that wood does not rot with such rapidity that the condition described could have existed such a short time that the city could not have discovered it by the exercise of reasonable care. That question was likewise for the jury. City of Nashville v. Nevin, 12 Tenn.App. 336, 337.''

On the question of contributory negligence the Court held that there was a question for the jury under the facts shown by the evidence and stated:

"A pedestrian is not required to keep his eye on the pavement at all times (Mayor, etc., of Knoxville v. Cain, 128 Tenn. 250, 255, 159 S.W. 1084 [48 A.L.R., N.S., 628], Ann.Cas.1915B, 762); and it is not negligence to fail to look for danger which, under the circumstances, the injured party had no reason to apprehend (45 C.J. 950; Ellis v. Cotton Oil Co., 3 Higgins [3 Tenn.Civ. App.] 642).''

█ We think the proposition is sound as stated by counsel for plaintiff that, whether a municipality has had actual notice of the defective condition of a meter box or whether the condition had existed for a sufficient period of time for the municipality to be advised of its

existence by the exercise of ordinary care, present questions of fact for a jury to determine under proper instructions from the court, See Yokley on Muncipal Corporations, Vol. 3, Sec. 461(h), page 98; City of Nashville v. Nevin, 12 Tenn.App. 336.

■ Another rule which is applicable in the case at bar, and one which has been repeatedly stated by our Courts, is, that, in civil cases where facts are proved by a preponderance of the evidence, if unequal, conflicting or inconsistent theories are shown by the evidence, if the minds of reasonable men might differ from the facts so shown as to which of the conflicting or inconsistent theories is supported by the evidence, the case should go to the jury. Phillips v. Newport, 28 Tenn.App. 187, 187 S.W.(2d) 965.

The same proposition was stated in Finks v. Gillum, 38 Tenn. App. 304, 273 S.W.(2d) 722 as follows:

"Upon consideration of motion made by defendant for directed verdict, plaintiff is entitled to all legitimate inferences of fact favorable to him which may reasonably be drawn from evidence tending to support cause of action stated in his declaration and trial judge should take most favorable view of the evidence supporting the rights asserted by party against whom the motion is made and discard all countervailing evidence."

■ On the question of notice, it has been held, and we think the applicable rule here is that notice of a defect will be imputed to the City where, from the nature of the defect, and other circumstances, it can be fairly presumed that the City either had, or could, by the exercise of reasonable care and diligence, have had, knowledge of

the defect. Town of Franklin v. House, 104 Tenn. 1, 55 S.W. 153, Jones v. City of Knoxville, 172 Tenn. 1, 108 S.W. (2d) 882.

In this case it is to be noted that the plaintiff did not step into a hole or defect in the street that he knew or should have known was there, but there is evidence in the record to the effect that the defective meter box was at least partially covered with ice and snow, and it is a reasonable assumption that, if it had not been defective his foot would not have slipped into the box and the top would not have fallen on his foot. Furthermore, there is evidence that this meter box had been in a defective condition for a considerable length of time.

The statement of plaintiff on cross-examination that the meter box top was some inches out of place when his foot slipped into the hole, seems to have been a conclusion reached by him after a long lapse of time since the accident and was said in an attempt to explain the matter while being rather rigidly examined. It is not in accord with some of his other testimony. However, the essential facts of his injury are not is dispute.

Due to his age, health and condition, as reflected by his whole testimony and some apparent confusion on his part, we do not think this isolated statement is sufficient to compel the conclusion that there is insufficient evidence upon which to predicate a finding of negligence on the part of the City. It is still a question for the jury in view of all the facts and circumstances shown by the record.

It results that the judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

Humphreys and Puryear, JJ., concur.