# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**October 16, 1998**

**Cecil W. Crowson
Appellate Court Clerk**

RONNIE POOL and LINDA PARKS,    )
Co-Administrators for the Estate of    )
NATHAN POOL, and as next of kin    )
of Nathan Pool,    )
    )
    Plaintiffs/Appellants,    )    Tennessee Claims Commission
    )    No. 103859
    )
VS.    )
    )
    )    Appeal No.
STATE OF TENNESSEE,    )    01A01-9802-BC-00104
    )
    Defendant/Appellee.    )


APPEAL FROM THE TENNESSEE CLAIMS COMMISSION

THE HONORABLE W. R. BAKER, COMMISSIONER


For the Plaintiffs/Appellants:

Robert S. Peters
SWAFFORD, PETERS & PRIEST
Winchester, Tennessee

For the Defendant/Appellee:

John Knox Walkup
Attorney General and Reporter

Michael Moore
Solicitor General

Kimberly J. Dean
Deputy Attorney General


## AFFIRMED AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves the death of a motorist whose vehicle was swept off a flooded highway bridge during a torrential rainfall. The administrators of the motorist's estate filed a claim with the Tennessee Claims Commission asserting that state highway officials knew or should have known about the flooded condition on the bridge and negligently failed either to avert the flooding on the bridge or to warn motorists of the bridge's unsafe condition. Following an evidentiary hearing, the claims commissioner entered judgment for the State because the claimants had failed to prove that the state employees had sufficient notice of the bridge's dangerous condition to enable them to close the bridge to the public. The administrators of the motorist's estate assert on this appeal that the evidence does not support the claims commissioner's decision. We affirm the claims commissioner's dismissal of the claim.

## I.

In late December 1990, Franklin County received an unseasonable record rainfall that led to extensive and widespread flooding throughout the county. On December 22, 1990, the water in the Woods Reservoir had reached such high levels that Arnold Engineering Development Center found it necessary to open its dam and release large quantities of water into the Elk River. The Center notified the Estill Springs chief of police of its decision but did not notify the Tennessee Department of Transportation. The release of the water from the Woods Reservoir coupled with the continuing heavy rain caused the Elk River to begin to flood at approximately 10:00 p.m. on December 22, 1990.

By the morning of December 23, 1990, the Elk River had risen above its banks and had flooded a bridge on State Highway 279, approximately five miles east of Spring Creek Road. When Gary Leech, a local resident, discovered the condition of the bridge, he placed four orange soccer cones across the highway to warn approaching drivers that the bridge was impassible due to high water. Mr. Leech did not contact the Department of Transportation to alert them to the flooding on the bridge.

During the early afternoon of December 23, 1990, Glenn Fulmer, a maintenance employee with the Department of Transportation who was working in

another part of the county, left Estill Springs to obtain additional road materials. He noticed the orange cones on the highway as he approached the bridge on Highway 279, and, when he arrived at the bridge, he saw water rushing over the bridge. Mr. Fulmer decided that crossing the flooded bridge would be too dangerous and turned back to Estill Springs to report what he had observed to Carl Crownover, his supervisor. As soon as Mr. Fulmer reported the condition of the bridge, Mr. Crownover dispatched workers to erect warning signs and barricades at the bridge.

Before the highway workers could return to the bridge, Nathan Pool, a 67-year-old resident of Coffee County, arrived at the bridge and decided to cross it even though it was flooded. The floodwater swept Mr. Pool's truck off the bridge, and Mr. Pool drowned in the Elk River.

Fifteen months later, in March 1992, the administrators of Mr. Pool's estate filed a wrongful death claim with the Tennessee Claims Commission. They alleged that Department of Transportation employees knew or should have known that the bridge was flooded and that they failed to protect the public from the dangerous condition. The case was tried before a single claims commissioner on October 30 and 31, 1997. The claims commissioner determined that the Department of Transportation employees did not receive notice of the bridge's condition in sufficient time to enable them to close the bridge to traffic. The administrators of Mr. Pool's estate have appealed.

## II.

The State cannot be sued without its consent. *See Shell v. State*, 893 S.W.2d 416, 420 (Tenn. 1995). However, Tenn. Const. art. I, § 17 empowers the General Assembly to authorize claims against the State, and the General Assembly exercised its power in 1984 when it established the Tennessee Claims Commission.[1] The provisions of this Act must be strictly construed because the Act departs from the common law. *See Hill v. Beeler*, 199 Tenn. 325, 329, 286 S.W.2d 868, 869 (1956); *Daley v. State*, 869 S.W.2d 338, 340 (Tenn. Ct. App. 1993).

---

[1]*See* Act of May 24, 1984, ch. 972, 1984 Tenn. Pub. Acts 1026, codified at Tenn. Code Ann. §§ 9-8-301, -405 (1992 & Supp. 1998).

Tenn. Code Ann. § 9-8-307(a)(1)(J) (Supp. 1998) provides that the Tennessee Claims Commission has jurisdiction to adjudicate monetary claims against the State of Tennessee arising out of dangerous conditions on state-owned highways. In order to prevail under that section, a claimant must establish (1) that the risk was foreseeable and (2) that the proper state official received notice of the condition sufficiently prior to the injury to have enabled them to take appropriate measures. *See Sweeney v. State*, 768 S.W.2d 253, 254-59 (Tenn. 1989).

The claims commissioner found that the State could reasonably have foreseen the risk to life and property as a result of the record rainfall and resulting flooding in the area. Thus, the pivotal issue is whether the proper state officials had notice of the dangerous condition of the flooded bridge in enough time to take protective measures that would have prevented Mr. Pool's death. This is a factual issue. *See James v. Metropolitan Gov't*, 55 Tenn. App. 622, 628-29, 404 S.W.2d 249, 252 (1966); *see also Fagg v. Franklin County*, No. 01A01-9710-CV-00589, 1998 WL 313390, at *2 (Tenn. Ct. App. June 16, 1998) (No Tenn. R. App. P. 11 application filed). Accordingly, we will review the claims commissioner's finding that the State did not have sufficient notice to act using the standard of review in Tenn. R. App. P. 13(d) and will presume that the finding is correct unless the evidence preponderates against it. *See Sanders v. State*, 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989).

### III.

The outcome of the pivotal notice question turns on the credibility of the witnesses. As a general matter, when we review factual findings under Tenn. R. App. P. 13(d), we will not reverse findings that hinge on the witnesses' credibility unless the record contains clear, concrete, and convincing evidence necessarily negating witness credibility. *See Thompson v. Creswell Indus. Supply, Inc.*, 936 S.W.2d 955, 957 (Tenn. Ct. App. 1996); *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 302 (Tenn. Ct. App. 1984).

The administrators of Mr. Pool's estate base their assertion that proper state officials had adequate notice that the bridge had flooded on the testimony of Joe Owensby, a dispatcher employed by the Franklin County Sheriff, and Dennis Young, the Chief of Police of Estill Springs. Mr. Owensby testified that he telephoned Don Penney and Mr. Crownover during the early evening of December 22, 1990, to report

the flooding on the bridge. Chief Young testified that he telephoned Mr. Crownover around noon on December 23, 1990 to request that barricades be placed at the bridge because Arnold Engineering Development Center was going to release water from the Woods Reservoir.

Messrs. Penney and Crownover contradicted this testimony. Mr. Penney testified that he did not recall receiving a telephone call from Mr. Owensby on December 22, 1990. For his part, Mr. Crownover testified that neither Mr. Owensby nor Chief Young spoke with him about the Elk River bridge on either December 22 or December 23, 1990. He explained that he could not have been reached by telephone at the time because he had been in the field and because his only means of communication was his truck radio.

The claims commissioner who heard this conflicting testimony was required to decide where the weight of the evidence lay. He concluded that Mr. Owensby's testimony, while given in good faith, was confused and was undermined by the absence of a written entry in his official log of the calls he remembered making to Messrs. Penney and Crownover. Similarly, he found that Chief Young's testimony about contacting Mr. Crownover by telephone on December 23, 1990 was mistaken because Mr. Crownover was not available by telephone during the times that Chief Young testified that they discussed the Elk River bridge by telephone. Having reviewed the record, we fail to find clear and convincing evidence undermining Messrs. Penney's and Crownover's testimony. We also decline to conclude that the evidence preponderates against the claims commissioner's conclusions that the State did not have notice of the Elk River bridge flooding until Mr. Fulmer's meeting with Mr. Crownover on the afternoon of December 23, 1990.[2]

## IV.

We affirm the decision of the Tennessee Claims Commission and remand the case for whatever further proceedings may be required. We also tax the costs of this appeal to the Administrators of the Estate of Nathan Pool and their surety for which execution, if necessary, may issue.

---

[2]Because we have concluded that the claims commission properly dismissed this claim because proper state officials did not have timely notice of the dangerous condition of the bridge, we need not address the State's alternative argument that Mr. Pool's negligence was fifty percent (50%) or more of the cause of this death.

_____

WILLIAM C. KOCH, JR., JUDGE


CONCUR:

_____

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.


_____

WILLIAM B. CAIN, JUDGE