IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 9, 2004 Session

## KIM JONES, D/B/A KIM'S KIDDIE KORNER, v. STATE OF TENNESSEE

**Direct Appeal from the Claims Commission**
**No. 20301384      Hon. Vance W. Cheek, Jr., Commissioner**

---

**No. E2004-00780-COA-R3-CV  - MARCH 14, 2005**

---

Claimant sought reimbursement for child care under the Child Care Certificate Program. The Commissioner granted the State summary judgment on the grounds that the State was not contractually bound to reimburse claimant under the governmental immunity statutory scheme. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Claims Commission Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

J. Michael Dixon, Knoxville, Tennessee, for appellant.

Paul G. Summers, Attorney General and Reporter,
and
Steven B. McCloud, Assistant Attorney General, Nashville, Tennessee, for appellee.

**OPINION**

In this action plaintiff made claim for reimbursement for child care services which she provided after the State had suspended her day care license, under the Child Care Certificate Program. The Claims Commissioner, *inter alia* granted the State summary judgment:

> based upon Paragraph 17 of the Department of Human Services Provider Agreement
> form, and Section B.1.A of the Provider Policy Guidebook that was in effect at the

time the plaintiff was issued the notice of denial of her child care license, there exists no genuine issue of material fact such that defendant is entitled to a judgment as a matter of law.

The material facts are not in dispute. In March 2002 the claimant's daycare license was suspended over an issue regarding the failure to report possible child abuse. The license was subsequently reinstated, but later November 13, 2002, the State notified the claimant that her daycare license would not be renewed, and payments under the Childcare Certificate Program were terminated for the children enrolled in the Program. Claimant appealed the decision through the appropriate administrative channels, and was successful in obtaining her license renewal. During the process, Claimant continued to operate the daycare and provide services for the Program children under an "informal extension" of her existing license. When the matter was resolved, the State began payments effective February 6, 2003.

Claimant requested payment for the services she provided from November 13, 2002 through February 6, 2003. The State refused to reimburse the claimant, asserting that the jurisdictional requirements of the statute were not satisfied, and that the policies in effect governing the Child Care Certificate Program at the time the payments were terminated state that:

> Payments to an agency will immediately stop upon the issuance of a denial or revocation of a child care license. . . (even if the action is under appeal).

> The child care agency will be terminated from the Certificate Program. No child care will be reimbursed after the termination date and there will be no appeal of this termination.

Provider Policy Guidebook, section B.1.A.

Additionally, as a prerequisite to participation in the Child Care Certificate Program, the claimant was required to sign a Provider Agreement which states at paragraph 17:

> That upon the issuance of a denial, revocation, or suspension of a license or registration home certificate, the Department of Human Services may immediately, without further review or hearing, terminate certificate payments.

> Claimant has appealed the Commissioner's grant of summary judgment to the State.

As an initial matter, claimant asserts that the policies governing the Program in effect during the relevant period of time did not address the circumstances in this case, i.e., the failure to renew the daycare license. This argument is without merit, because the Rules and Regulations of the Department of Human Services, Procedures Affecting Licenses of Child Care Agencies define the denial of a license as "the decision of the Department not to issue or renew a license". Tenn. Comp. R. & Regs. § 1240-4-5-.02(15). Further, claimant argues that she relies primarily upon the

policy regulations as amended in August 2003 as her primary legal authority.[1]

A basic principle of statutory construction is that statutes are applied prospectively, unless the legislature clearly indicates otherwise. *Shell v. State,* 839 S.W.2d 416, 419 (Tenn. 1995). A statute that creates (or eliminates) a right of recovery or changes the amount of recoverable damages has altered the parties' vested rights and cannot be considered remedial. *Id. at 420; see also*, *Anderson v. Memphis Housing Auth.,* 534 S.W.2d 125, 127-28 (Tenn. Ct. App. 1975). This analysis is appropriate when construing a state agency's policies, as well as statutes. The policy that claimant would have this Court apply is not remedial. Moreover, the new policy itself states that §B.1 Licensing and Registration Compliance is to be deleted in its entirety and the new policy inserted, effective August 8, 2003. Thus, the revised policy, by its own terms, is not applicable to this case.

The doctrine of sovereign immunity mandates that the State cannot be sued without legislative authorization, derived from Article I, section 17 of the Tennessee Constitution. *Pool v. State,* 987 S.W.2d 566, 568 (Tenn. Ct. App. 1998).

In 1984, the General Assembly exercised its constitutional authority and established the Tennessee Claims Commission, empowering it with exclusive jurisdiction to determine all monetary claims against the State. *Id.* Tenn. Code Ann. § 9-8-301 *et seq.* However, the jurisdiction of the Claims Commission is limited to those claims enumerated in Tenn. Code Ann. § 9-8-307(a). *Stewart v. State,* 33 S.W.3d 785, 790 (Tenn. 2000). If a claim falls outside those specific enumerated categories, then immunity is not waived, and the claimant has no cause of action against the State.

The Trial Court ruled that it was without subject matter jurisdiction, and also granted summary judgment to the State on the merits. The claimant did not appeal the Order of Dismissal,

---

[1]Section B.1.B., Denial and Revocation of License, of the Provider Policy as revised in August 2003, states in relevant part:

> The Certificate Program will re-enroll children and restart payments as of the original decision date if the Board does not uphold the denial or revocation and decides in favor of the child care provider. The Certificate Program will also "back-pay" the child care payments for all enrolled children that remained with the provider during the appeal process. The Certificate Program will only "back-pay" child care payments after the Board of Review decides in favor of the provider.
>
> If the provider and Child Care Licensing settle the case regarding the denial or revocation without input from the Board of Review, and the license or certificate is reinstated, the Certificate Program will re-enroll children with the provider. The Certificate Program will not "back-pay" child care payments for any children enrolled in the Certificate Program at the time of the suspension or revocation remaining with the provider during the process.

and argues that when a case is dismissed, the Court need not reach a motion for summary judgment, and as the argument goes, when the Commissioner ruled he did not have subject matter jurisdiction, he had no authority to rule on the motion for summary judgment, which goes to the merits of the litigation. Claimant's argument is disingenuous. While it is not necessarily fatal to the appeal to not properly identify the order from which an appeal is taken,[2] Claimant here is affirminately asserting that it was unnecessary to appeal from the dismissal. While the State attempts to raise this issue on appeal, we pretermit the issue and address the issue raised by the claimant as to the propriety of summary judgment in this case.

When the first statute waiving the state's sovereign immunity was enacted in 1977, it omitted actions based on express or implied contracts or a breach thereof.[3] In 1980, the Legislature narrowed the scope of the waiver by eliminating causes of action based on implied contracts. *See generally, Computer Shop, Inc., v. State of Tennessee*, 780 S.W.2d 729-736 (Tenn. Ct. App. 1989). The Claims Commission Act which was originally enacted in 1984 precluded claims based upon implied contracts, permitting only claims against the State arising out of "[a]ctions founded on any express contract or breach thereof." Historically, courts have held that the express contracts may be either written or oral. *Id.* at 736. In response to a request from the Attorney General to the General Assembly to limit the scope of § 9-8-307(a)(1)(L), the Section was amended in 1989 to its present version further restricting breach of contract claims against the State to "a written contract between the claimant and the State which was executed by one (1) or more State officers or employees with authority to execute the contract." As if to underscore the significance of the execution requirement, § 9-8-307(a)(1)(L) recognizes an exception for group insurance agreements.[4] However, the legislature did not provide a similar exception for provider agreements for participants in the Child Care Certificate Program. In this case, the State has undeniably promulgated certain documents which purport to define the scope of the relationship between the State and participants in the Child Care Certificate Program. However, the claimant has not pointed to any language in either the Provider Agreement or the Provider Policy Guidebook wherein the State manifests an intent to be bound. The documents suggest the opposite conclusion. They provide that the State may suspend

---

[2]*Dunlap v. Dunlap*, 996 S.W.2d 803, 810-811 (Tenn. Ct. App. 1998).

[3]This statute was originally codified at Tenn. Code Ann. § 29-10-101 through 29-10-103.

[4]Tenn. Code Ann. § 9-8-307(a)(1):
(L) Actions for breach of a written contract between the claimant and the state which was executed by one (1) or more state officers or employees with authority to execute the contract; provided, that the group insurance agreements created pursuant to §§ 8-27-201 and 8-27-302 shall be considered contracts for purposes of this subsection in order for the commission to determine insurance claims which have been previously rejected by the state insurance committee or the local education insurance committee;

or terminate payments upon the denial or revocation of a license, even pending appeal of the license, and without further review or hearing.

Claimant insists that a contract exists between the State and claimant because the claimant performed services as a participant in the Child Care Certificate Program and the State paid for those services. While the State's actions may have created an expectation in the claimant's mind that an enforceable contract existed, the law is well settled that subject matter jurisdiction cannot be conferred by consent or conduct of the parties. *See, The Computer Shoppe, Inc.,* 780 S.W.2d 729, 734 (Tenn. Ct. App. 1989); *see also*, *Shelby County v. City of Memphis,* 365 S.W.2d 291, 292 (Tenn. 1963); *Seagram Distillers Co. v. Jones,* 548 S.W.2d 667, 671 (Tenn. Ct. App. 1976). Claimant argues that the Provider contract she signed is enforceable against the State, but she provides no authority for her position. Adherence to the principle of statutory interpretation compels a contrary conclusion:

> Where the legislature permits relief against the State, the conditions prescribed by such statute must be strictly construed, and jurisdiction to grant relief cannot be enlarged upon by implication.

*Brown v. State*, 783 S.W.2d 567-571 (Tenn. Ct. App. 1989) (citations omitted).

Claimant would have this Court write out the unambiguous requirement that contracts which obligate the State must be executed by a State official. Such a ruling would be tantamount to judicially creating a waiver of sovereign immunity to which the State has not consented, particularly in light of the progressively narrowing of the statute since its original enactment. *See generally, Northland Ins. Co. v. State*, 33 S.W.3d 727 (Tenn. 2000). In this regard, *see, Petty v. State*, 2002 WL 415650 (Tenn. Ct. App. March 18, 2002); *State v. Ku*, 104 S.W.3d 870 (Tenn. Ct. App. 2003), and *Gardner v. University of Memphis College of Business*, 2003 WL 1872650 (Tenn. Ct. App. April 8, 2003).

We affirm the summary judgment entered by the Commissioner, and remand, with the costs of the appeal assessed to Kim Jones.

_____
HERSCHEL PICKENS FRANKS, P.J.