IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 5, 2005 Session

## JAMES A. HODGE v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. 400499      W. R. Baker, Commissioner**

---

**No. M2004-00137-COA-R3-CV- Filed January 5, 2006**

---

This appeal involves a motorcycle rider who was seriously injured while crossing two heavy steel plates placed over the surface of a portion of a state highway that was under construction. The rider filed a claim with the Tennessee Claims Commission asserting that the front tire of his motorcycle became lodged in a gap between the two steel plates and that this gap was the dangerous condition that caused his injuries. Following a hearing, a claims commissioner dismissed the claim after concluding (1) that the rider had failed to prove that the State, rather than the highway contractor, was responsible for maintaining the steel plates, (2) that the rider had failed to prove that the State had notice of the gap between the plates, and (3) that the rider's negligence exceeded that of the State. The motorcycle rider has appealed. We have determined that the claims commissioner erred by concluding that the State was not on notice of the dangerous condition on the highway and that the motorcycle rider's negligence exceeded the State's negligence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Reversed And Remanded**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

Wm. Kennerly Burger, Murfreesboro, Tennessee, for the appellant, James A. Hodge.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and George H. Coffin, Jr., Senior Counsel, for the appellee, State of Tennessee.

**OPINION**

**I.**

On August 1, 1993, James Hodge drove his motorcycle to Waynesboro to visit one of his sons. His other son, John Hodge, accompanied him to Waynesboro in a separate automobile. At approximately 5:00 p.m., James Hodge and John Hodge left Waynesboro for their home in Sewanee. James Hodge traveled on his motorcycle while John Hodge drove ahead of him in his automobile.

As the Hodges drove east on U.S. Highway 64, they encountered road construction on a section of the highway in the western portion of Lincoln County. At one spot on a downhill curve, the contractor of the construction project had placed three one-inch thick rectangular steel plates over the pavement. Although the plates were fastened together with welded straps, one of these welds had broken, forming a gap between the plates running parallel to the direction of the traffic. The gap was located in the middle of the east bound lane.

Traveling ahead of his father, John Hodge noticed the construction warning signs and the steel plates. At that point, he remembered that two weeks earlier, he had passed these same steel plates and had noticed that they had separated, forming the gap between the plates in the middle of the east bound lane. After braking appropriately, he drove across the steel plates without incident. John Hodge then looked in his rearview mirror to see if his father had safely crossed the plates. When he first looked, he saw his father approaching the gap between the plates. He then saw his father's motorcycle "lower" and come back "out of the groove." When John Hodge looked again, he saw his father "off the side of the road" with dust "flying up." As John Hodge later testified, "I saw him go over the front of his motorcycle and his helmet hit the fairing, the fairing broke and then he wound up 20 foot [sic] past his motorcycle in some very large rocks."

James Hodge was rushed to Lincoln Regional Hospital and later airlifted to Erlanger Medical Center in Chattanooga where he remained hospitalized for more than one month. He sustained a closed head injury that affected his ability to speak and walk. Both James Hodge and John Hodge retained a lawyer and filed suit in the Circuit Court for Lincoln County against the contractor who was working on the highway and who had originally placed the steel plates in the road.[1] They also filed a claim against the State of Tennessee with the Division of Claims Administration. In October 1994, the Division of Claims Administration transferred the claims to the Tennessee Claims Commission.

The Hodges' claims against the State lay dormant for almost nine years. During this time, the Hodges' original lawyer withdrew, and James Hodge failed to report to the Commission whether he intended to proceed with his claim. John Hodge eventually withdrew his claim, and the State attempted unsuccessfully to convince the Claims Commission to dismiss James Hodge's claim. Eventually, James Hodge retained his present lawyer and the case proceeded.

During a June 2003 hearing, James Hodge testified (1) that he had been driving cautiously when he was thrown from his motorcycle, (2) that he had been wearing a safety helmet, and (3) that he was not under the influence of any substance when the accident occurred. He introduced pictures showing a gap between the steel plates that was approximately four to six inches wide. In addition, he called John Hodge as a witness. John Hodge testified that he had noticed the gap two weeks earlier when he was driving over the same stretch of road, and that he had purposely avoided driving over the gap on his return trip. James Hodge also presented the deposition of Tommy Joyce, an

---

[1]This lawsuit was later dismissed because the lawyer originally retained by the Hodges sued the wrong company. *Hodge v. Jones Holding Co.*, No. M1998-00955-COA-R3-CV, 2001 WL 873458 (Tenn. Ct. App. Aug. 3, 2001) (No Tenn. R. App. P. 11 application filed).

inspector employed by the State. Mr. Joyce had testified that the plates had been in place for approximately one year and that he had been monitoring the construction on a daily basis but had failed to notice anything unsafe about the steel plates.

The claims commissioner filed a final order and judgment on June 19, 2003. The commissioner denied James Hodge's claims based on three conclusions. First, the commissioner concluded that James Hodge had failed to prove that the State, rather than the highway contractor, was responsible for his injuries. Second, the commissioner concluded that James Hodge had failed to prove that the State had notice of the dangerous condition. Third, the commissioner concluded that even if the State had been negligent, James Hodge's negligence equaled or exceeded the State's negligence. James Hodge perfected this appeal.

## II.
### THE STANDARD OF REVIEW

Appeals from decisions of individual claims commissioners or the decisions of the entire Claims Commission are governed by Tenn. Code Ann. § 9-8-403(a)(1) (Supp. 2005), which provides that these appeals will be governed by the Tennessee Rules of Appellate Procedure. Accordingly, because the Claims Commission hear cases without a jury, this court reviews their legal and factual decisions using Tenn. R. App. P. 13(d)'s now familiar standard of review for non-jury cases. With regard to factual questions, we must review the record de novo, and we must presume that the Claims Commission's findings of fact are correct unless the evidence preponderates otherwise. *Beare Co. v. State*, 814 S.W.2d 715, 717 (Tenn. 1991); *Dobson v. State*, 23 S.W.3d 324, 328-29 (Tenn. Ct. App. 1999); *Sanders v. State*, 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989). However, we must review questions of law de novo without a presumption of correctness. *Turner v. State*, No. W2004-02582-COA-R3-CV, 2005 WL 1541863, at *3 (Tenn. Ct. App. June 3, 2005), *perm. app. denied* (Tenn. Oct. 24, 2005); *Crew One Prods., Inc. v. State*, 149 S.W.3d 89, 92 (Tenn. Ct. App. 2004); *Belcher v. State*, No. E2003-00642-COA-R3-CV, 2003 WL 22794479, at *4 (Tenn. Ct. App. Nov. 25, 2003), *perm. app. denied* (Tenn. May 10, 2004).

## III.
### THE STATE'S LIABILITY FOR DANGEROUS CONDITIONS ON A HIGHWAY

The State of Tennessee has a duty to exercise reasonable care to make its highways safe. *Goodermote v. State*, 856 S.W.2d 715, 723 (Tenn. Ct. App. 1993). Accordingly, the State may be held liable for dangerous conditions on state maintained highways when it breaches this duty and the breach causes injury or damage. Tenn. Code Ann. § 9-8-307(a)(1)(J) (Supp. 2005). The State liability must be based on the application of the same traditional tort principles that are applicable to private persons. Tenn. Code Ann. § 9-8-307(c), (d); *see also Hames v. State*, 808 S.W.2d 41, 44 (Tenn. 1991). Therefore, to recover damages from the State for a dangerous condition on a state maintained highway, the claimant must prove (1) that it was reasonably foreseeable that the allegedly dangerous condition could cause an injury and (2) that proper state officials had notice of the condition in sufficient time either to remedy it or to provide appropriate warning of its existence. Tenn. Code Ann. § 9-8-307(a)(1)(J).

Determining whether a particular condition is dangerous or hazardous to an ordinary prudent driver requires an analysis of the facts. *Sweeney v. State*, 768 S.W.2d 253, 255 (Tenn. 1989); *Goodermote v. State*, 856 S.W.2d at 723. Among the facts to be considered are (1) the physical aspects of the roadway, (2) the frequency of accidents at that particular location, and (3) the testimony of expert witnesses, if any. *Sweeney v. State*, 768 S.W.2d at 255; *Burgess v. Harley*, 934 58, 64 (Tenn. Ct. App. 1996).

Foreseeability is the test of negligence, *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992), because no person is expected to protect against harms from events that cannot be reasonably anticipated or that are so unlikely to occur that the risk, although recognizable, would commonly be disregarded. *Ward v. Univ. of the South*, 209 Tenn. 412, 421-22, 354 S.W.2d 246, 250 (1962); *Rains v. Bend of the River*, 124 S.W.3d 580, 593 (Tenn. Ct. App. 2003). Thus, determining whether the State has exercised reasonable care under the circumstances depends on the foreseeability of the risk involved. *Morgan v. State*, No. M2002-02496-COA-R3-CV, 2004 WL 170352, at *6 (Tenn. Ct. App. Jan. 27, 2004) (No Tenn. R. App. P. 11 application filed).

A risk of injury is foreseeable if a reasonable person could foresee the probability that injury will occur. *Doe v. Linder Constr. Co.*, 845 S.W.2d at 178. To recover in a negligence action, the plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that the defendant could have taken some action to prevent the injury. *West v. East Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 551 (Tenn. 2005); *Dobson v. State*, 23 S.W.3d at 331. Foreseeability does not require awareness of the precise manner in which an injury takes place, but rather a general awareness that injuries similar to those actually sustained could occur. *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991); *Goodermote v. State*, 856 S.W.2d at 721.

The analysis does not end with determining that a risk of injury is sufficiently probable to give rise to a duty to exercise reasonable care to prevent the injury. *See Belcher v. State*, 2003 WL 22794479, at * 6 (stating that it is not enough to prove the existence of a dangerous condition or that the State negligently constructed, improved, or maintained the highway). Persons seeking to recover in negligence actions must also prove that the defendant's failure to exercise reasonable care was both the cause in fact and the legal cause of their injury or damage. *Draper v. Westerfield*, ___ S.W.3d ___, ___, 2005 WL 2513888, at *5 (Tenn. 2005); *Biscan v. Brown*, 160 S.W.3d 462, 478 (Tenn. 2005). They must also present sufficient evidence to establish that the State had appropriate notice of the dangerous condition in enough time to take appropriate protective measures. *Pool v. State*, 987 S.W.2d 566, 568 (Tenn. Ct. App. 1998).

## IV.
### MR. HODGE'S EVIDENCE REGARDING THE STATE'S LIABILITY

Mr. Hodge asserts on this appeal that the evidence does not support the claims commissioner's conclusions (1) that he failed to establish that the State, as opposed to the highway contractor, was responsible for the gap between the steel plates, (2) that the State did not have notice of the gap between the steel plates in sufficient time to correct the problem, and (3) that his

negligence equaled or exceeded the State's. We have determined that the evidence preponderates against the claims commissioner's findings and conclusions on each of these points.

## A.

The evidence establishes that the State had contracted with Jones Brothers Construction Company (Jones Brothers) to repair and improve the portion of U. S. Highway 64 where Mr. Hodge was injured. The work was being inspected and supervised by Mr. Joyce and other Tennessee Department of Transportation employees on a daily basis. Approximately one year before Mr. Hodge was injured, Jones Brothers and the State made a joint decision to lay the steel plates on the surface of the highway, and employees of Jones Brothers performed the work. It is also essentially undisputed that one of the welds holding the plates together had broken and that a gap had formed between the plates.

The State argued below, and the claims commissioner apparently concluded, that Jones Brothers was solely responsible for the placement of the steel plates. However, this conclusion overlooks (1) that Jones Brothers was working on a state project and (2) that Mr. Joyce and other state employees were monitoring the work on a daily basis. Part of Mr. Joyce's job included assuring that the work was being performed properly and in a timely manner and that the construction area was safe for the workers and the motoring public. The fact that the State assumed the responsibility to see to it that the construction was being performed in a safe manner provides the necessary factual predicate for potential liability under both Tenn. Code Ann. § 9-8-307(a)(1)(J) and Tenn. Code Ann. § 9-8-307(a)(1)(I).

## B.

The State relied upon Mr. Joyce's testimony to substantiate its claim that it did not have adequate notice of the existence of the gap between the steel plates as required by Tenn. Code Ann. § 9-8-307(a)(1)(J). The State argued that Mr. Joyce's testimony that he did not notice anything unsafe about the steel plates proves either that there was no gap between the plates prior to Mr. Hodge's accident or that it had occurred so recently that the State had not had sufficient time to discover and correct it. The claims commissioner accepted this argument.[2]

Mr. Joyce's testimony does not support the State's position. He never testified that the gap between the steel plates did not exist prior to Mr. Hodge's accident or even that he would have noticed the gap had it existed. He never testified that he would have had the gap repaired had he observed a gap similar to the one depicted in the photographs taken by John Hodge. He simply testified that he did not notice anything unsafe about the steel plates. This statement could easily be

---

[2]The claims commissioner's order stated that "[a]n experienced inspector was on the job site so frequently that had the complained of condition existed for any length of time, it would have surely come to his attention. The fact that it did not, indicated that the condition occurred so recently that there is no way the State could have possibility had notice of it."

interpreted to mean that Mr. Joyce was aware of the gap between the steel plates but that it did not occur to him that the gap was dangerous or unsafe.

Mr. Joyce's equivocal testimony regarding the gap between the steel plates is not the only evidence in the record regarding the length of time the gap might have existed. John Hodge testified without contradiction that he had observed the gap two weeks before his father was injured. This testimony, coupled with Mr. Joyce's insistence that he inspected the construction site every day, provides sufficient evidence to support a finding that the gap had been in existence long enough for Mr. Joyce to discover and correct it.

## C.

As a final matter, the claims commissioner determined that Mr. Hodge could not recover from the State because his negligence equaled or exceeded the State's negligence. While triers of fact have considerable latitude in allocating fault among the parties, *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995), appellate courts, using the standards in Tenn. R. App. P. 13(d), may reallocate fault in non-jury cases when the evidence preponderates against the lower tribunal's allocation. *Cross v. City of Memphis*, 20 S.W.3d 642, 644-45 (Tenn. 2000); *Keaton v. Hancock County Bd. of Educ.*, 119 S.W.3d 218, 225-26 (Tenn. Ct. App. 2003).[3]

The claims commissioner's decision regarding the extent of Mr. Hodge's fault appears to rest on the facts that the area where the accident occurred was clearly under construction and that a sign had been posted warning motorists of a "bump" in the highway. While the sign's reference to a "bump" is not clearly explained, it is unlikely that the reference is to a "bump" resulting from the gap between the two steel plates. It is more likely that the sign referred to the "bump" resulting from the difference between the height of the surface of the roadway and the surface of the steel plates that had been placed in the roadway. We have concluded that simply warning motorists of a "bump" was not a sufficient warning of the dangerous condition caused by the gap between the steel plates.

We agree with the claims commissioner that motorcycle riders, like other motorists, must be on the lookout for dangerous conditions on the highway. However, we have concluded that neither James Hodge, nor any other motorcycle rider, would be negligent for failing to observe a gap approximately two inches wide between two steel plates placed over a highway. Based on the essentially undisputed evidence that James Hodge was traveling under the posted speed limit, that he was driving cautiously, that he was wearing a helmet at the time of the accident, and that he was not driving under the influence, we have concluded that the evidence preponderates against the trial court's conclusion that James Hodge's fault equaled or exceeded the State's fault. Thus, we have concluded that the claims commissioner erred by allocating more fault to James Hodge than to the State under the facts of this case.

---

[3]Appellate courts do not have the same prerogative with regard to a jury's allocation of fault. When a jury allocates fault, appellate courts must accept the jury's decision unless no material evidence supports it. *Braswell v. Lowe's Home Ctrs., Inc.*, 173 S.W.3d 41, 43 (Tenn. Ct. App. 2005). When the record contains no material evidence to support a jury's allocation of fault, the only recourse is to vacate the judgment and remand the case for a new trial. *See Jones v. Idles*, 114 S.W.3d 911, 914-15 (Tenn. 2003).

## V.

We reverse the order dismissing James Hodge's claim and direct the Tennessee Claims Commission on remand to enter an order sustaining his claim against the State and to conduct a hearing to ascertain and award the damages to which Mr. Hodge is entitled. We tax the costs of this appeal to the State of Tennessee.

_____
WILLIAM C. KOCH, JR., P.J., M.S.