# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs October 4, 2016

## JAMES BATES v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
No. T20150140-1      Commissioner William O. Shults, Commissioner

_____

## No. E2015-01819-COA-R3-CV-FILED-DECEMBER 1, 2016

_____

The plaintiff is an inmate who filed a claim with the Claims Commission after the Tennessee Department of Correction made the determination that inmates were prohibited from possessing small electric heating appliances known as "hotpots." He sought compensation for the loss of his hotpot under the Takings Clauses of the Tennessee and U.S. Constitutions. The Commission dismissed the plaintiff's claim because it did not have subject matter jurisdiction over takings claims involving only personal property. *See* Tenn. Code Ann. §§ 9-8-307(a)(1)(V); 12-1-202 (defining "private property" as "real property, or improvements to real property . . . ."). The plaintiff appealed, contending that the definition of "private property" was unconstitutional under the U.S. Supreme Court's decision in *Horne v. Dep't of Agric.*, --- U.S. ----,135 S. Ct. 2419, 192 L. Ed. 2d 388,  (2015), which held that the government is required to pay just compensation under the Takings Clause when it physically takes possession of either real or personal property. We have determined that the Commission did not have authority to decide the plaintiff's facial challenge to the constitutionality of the statute. We have also determined the plaintiff would not be entitled to compensation even if his constitutional challenge to the statute was successful. Consequently, we affirm the dismissal of his claim.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commissioner Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and KENNY W. ARMSTRONG, JJ., joined.

James Bates, Mountain City, Tennessee, Pro se.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Eric A. Fuller, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

**OPINION**

This is one of six related appeals in which the plaintiffs, all of whom are inmates, separately challenge "the taking" of small electronic heating devices known as "hotpots" as a result of a decision by the Tennessee Department of Correction ("TDOC").[1]

Pursuant to Department regulations, TDOC must annually publish a list of personal property inmates are permitted to have in their possession. *See* TDOC Policy No. 504.01.[2] The list of approved personal property that TDOC published in July of 2014 did not include hotpots. Previously, prisoners were permitted to possess hotpots.

Acting in furtherance of the July 2014 list of approved property, the warden of the Northeast Correctional Complex ("NECX") issued a memorandum to the NECX prison population. In relevant part, the warden's memo stated:

> Effective July 31, 2014, hotpots will no longer be considered an approved inmate personal property item at any TDOC facility.
>
> The removal of this item is necessary to comply with appropriate fire safety standards and to reduce the risk of personal injury.
>
> Hot pots [sic] may be mailed out of the institution through July 30. If you do not have sufficient funds to do so, NECX personnel will dispose of the item in accordance with policy. Any hotpot found after July 30 will be considered contraband and dealt with accordingly.

On July 16, 2014, James Bates ("Plaintiff") filed a claim with the State of Tennessee Division of Claims Administration seeking $26.95 in reimbursement because requiring him to mail his hotpot out of prison was "a taking under both Article 1, § 21 of the State Constitution and the 5th Amendment of the United States Constitution for which [he was] entitled to compensation." The Division denied Plaintiff's claim, and Plaintiff appealed the adverse ruling by filing a claim with the Claims Commission. *See* Tenn. Code Ann. § 9-8-402(c) ("If the claim is denied, the division shall so notify the claimant and inform the claimant of the reasons therefor and of the claimant's right to file a claim with the claims commission within ninety (90) days of the date of the denial notice.").

---

[1] The briefs that five of the six appellants have filed are nearly identical, and the other appellant's brief raises essentially the same issue on appeal.

[2] At the time this opinion was published, copies of TDOC's policies were available at: https://www.tn.gov/correction/article/tdoc-policies-and-procedures.

The State responded by filing a motion to dismiss, arguing in relevant part that the Claims Commission did not have jurisdiction over Takings Clause claims that involve only personal property. Under the Tennessee Code, the Claims Commission has jurisdiction of claims based on "[u]nconstitutional taking of private property, as defined in § 12-1-202 . . . ." *See* Tenn. Code Ann. § 9-8-307(a)(1)(V). Significantly, "private property" is defined as "real property, or improvements to real property, not owned by the federal government or a state agency." *See* Tenn. Code Ann. § 12-1-202(2). Because Plaintiff's claim did not involve real property, the State argued that the Claims Commission did not have jurisdiction over the matter at issue.

In August 2015, Plaintiff responded to the State's motion to dismiss by citing a recent decision of the U.S. Supreme Court. *Horne v. Dep't of Agric.*, --- U.S. ----,135 S. Ct. 2419, 192 L. Ed. 2d 388 (2015). In *Horne*, the Court held that the government is required to pay just compensation under the Takings Clause of the Fifth Amendment when it physically takes possession of either real or personal property. *See id.* at 2425-26.[3] According to Plaintiff's response:

> In light of this new ruling, . . . Tenn. Code Ann. § 12-1-202's provision that "'Private property' means real property, or improvements to real property, . . ." would be in direct contravention to the Supreme Court's holding in *Horne* that drastically affects the jurisdiction of this tribunal.

The Commissioner granted the State's motion and dismissed Plaintiff's claims for lack of subject matter jurisdiction. The Commissioner concluded that he had no jurisdiction over Plaintiff's takings claim because Tenn. Code Ann. § 9-8-307(a)(1)(V) only granted the Commission jurisdiction to determine takings claims involving real property. Further, the Commissioner concluded that he did not have subject matter jurisdiction to issue a declaratory judgment or to determine whether the definition of "private property" in Tenn. Code Ann. § 12-1-202(2) was unconstitutional.

Plaintiff appealed to this court. *See* Tenn. Code Ann. § 9-8-403(a)(1) (decisions of individual commissioners on the regular docket "may be appealed to the Tennessee court of appeals . . . .").

---

[3] The Takings Clause of the Tennessee Constitution has applied to personal property for many years. *See* Tenn. Const. art. 1, § 21; *Duck River Elec. Membership Corp. v. City of Manchester*, 529 S.W.2d 202, 207 (Tenn. 1975) ("[T]he constitutional prohibitions against taking private property without just compensation applies [sic] with full force and validity to personal property.") (citing *Zirkle v. City of Kingston*, 396 S.W.2d 356, 361 (Tenn. 1965)).

STANDARD OF REVIEW

We review the Commissioner's factual findings with a presumption of correctness unless the preponderance of the evidence is otherwise. *See Bowman v. State*, 206 S.W.3d 467, 472 (Tenn. Ct. App. 2006); *Pool v. State*, 987 S.W.2d 566, 569 (Tenn. Ct. App. 1998). In contrast, we review the Commissioner's legal conclusions de novo without a presumption of correctness. *See Bowman*, 206 S.W.3d at 472.

## ANALYSIS

In substance, Plaintiff argues that Tenn. Code Ann. § 9-8-307(a)(1)(V) is unconstitutional in any circumstance as long as it incorporates the definition of "private property" in section 12-1-202.[4] According to Plaintiff, the definition of "private property" in Tenn. Code Ann. § 12-1-202(2), which is limited to "real property or improvements to real property," is unconstitutional and should be removed from the statute.

As currently written, Tenn. Code Ann. § 9-8-307(a)(1)(V) states that the Claims Commission has jurisdiction of claims based on "[u]nconstitutional taking of private property, as defined in § 12-1-202 . . . ." If the reference to section 12-1-202 is elided, meaning removed from the statute, Tenn. Code Ann. § 9-8-307(a)(1)(V) would state that the Claims Commission has jurisdiction over claims involving "[u]nconstitutional taking of private property . . . ." Thus, Plaintiff insists the Claims Commission would have jurisdiction to hear his claim that his personal property was taken without compensation in violation of the Takings Clause.

The Commissioner correctly decided that not to address this argument. Plaintiff has not challenged the interpretation or application of the definition of "private property" to this specific circumstance. Rather, Plaintiff has brought a facial challenge to this part of the statute by arguing that this definition is unconstitutional in every situation and should be deleted. *See U.S. v. Salerno*, 481 U.S. 739, 745 (1987) (noting that facial challenges require the challenger to "establish that no set of circumstances exist under which the [statute at issue] would be valid."); *Waters v. Farr*, 291 S.W.3d 873, 921 (Tenn. 2009) (Koch, J., concurring in part and dissenting in part) ("A facial challenge to a

---

[4] We must strive to give effect to the substance rather than the form of a pro se litigant's briefs, and we are required to apply the controlling law, whether or not it has been cited. *See Haynes v. Rutherford Cnty.*, 359 S.W.3d 585, 588 (Tenn. Ct. App. 2011); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003). Although Mr. Bates has not discussed his argument in the same way that the appellants in the related cases have, the substance of his argument is essentially the same as theirs. Further, under the facts of Mr. Bates' case, the result he seeks is only obtained if we apply the doctrine of elision in the way that the appellants in the related cases advocate. Consequently, we will address Mr. Bates' argument in largely the same way that we address the other appellants' arguments. *See Haynes*, 359 S.W.3d at 588; *Young*, 130 S.W.3d at 63.

statute involves a claim that the statute fails an applicable constitutional test and should be found invalid in all applications."). Administrative agencies do not "have the authority to determine the facial validity of a statute under the constitutional requirement of separation of powers." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 844 (Tenn. 2008); *see* Tenn. Const. art. 2, § 2.[5] Such authority is reserved for the judiciary. *See Colonial Pipeline*, 263 S.W.3d at 843-44.

Although this court has the authority to rule on the facial constitutionality of a statute, we "will not pass on the constitutionality of a statute, or any part of one, unless it is absolutely necessary for the determination of the case and of the present rights of the parties to the litigation." *State v. Crank*, 468 S.W.3d 15, 28 (Tenn. 2015) (quoting *State v. Murray*, 480 S.W.2d 355, 357 (Tenn. 1972)). Therefore, we must consider whether Plaintiff would be entitled to relief if his constitutional challenge was successful. *See id.* This inquiry requires us to consider the limits of Plaintiff's desired remedy (i.e., the doctrine of elision) and the nature of Plaintiff's property rights during incarceration.

## I. THE DOCTRINE OF ELISION

The remedy that Plaintiff implicitly seeks is for this court to elide the reference to the definition of "private property" from Tenn. Code Ann. § 9-8-307(a)(1)(V). However, properly applying the doctrine of elision would not provide the Claims Commission with jurisdiction over Plaintiff's takings claim.

Under the doctrine of elision, courts may delete an unconstitutional portion of a statute and find the remaining portion to be constitutional and effective; however, use of the doctrine is not favored. *Lowe's Companies, Inc. v. Cardwell*, 813 S.W.2d 428, 430 (Tenn. 1991); *Gibson Cnty. Special School District v. Palmer*, 691 S.W.2d 544, 551 (Tenn. 1985). The doctrine of elision cannot be used as a license "to completely re-write or make-over a statute." *Crank*, 468 S.W.3d at 29 (quoting *Shelby Cnty. Election Comm'n v. Turner*, 755 S.W.2d 774, 778 (Tenn. 1988)). Moreover, we cannot elide a portion of a statute unless "it is made to appear from the face of the statute that the legislature would have enacted it with the objectionable features omitted . . . ." *State v. Tester*, 879 S.W.2d 823, 830 (Tenn. 1994) (quoting *Gibson*, 691 S.W.2d at 551). We cannot reach this conclusion "unless [it] is made fairly clear of doubt from the face of the

---

[5] As used in this context, "authority" refers to an agency's power to resolve a specific issue or grant a particular kind of relief. *See Colonial Pipeline*, 263 S.W.3d at 845 (discussing *McCarthy v. Madigan*, 503 U.S. 140, 146-49 (1992)). Administrative agencies may be "unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented, *such as the constitutionality of a statute.*" *McCarthy*, 503 U.S. at 147-48 (emphasis added), *superseded by statute on other grounds as recognized in Booth v. Churner*, 532 U.S. 731, 739-40 (2001). "Alternatively, an agency may be competent to adjudicate the issue presented, but still lack authority to grant the type of relief requested." *Id.* at 148.

statute." *See id.* Thus, we must determine whether the General Assembly would have enacted subsection (V) even if it did not contain a reference to the definition of "private property" in Tenn. Code Ann. § 12-1-202.

Having considered the matter, we find no indication that the General Assembly would have enacted the statue without a reference to section 12-1-202. Although the legislature created the Claims Commission in 1984, *see State v. Stewart*, 33 S.W.3d 785, 790 (Tenn. 2000), subsection (V) was not added until 1998. *See* 1998 Tenn. Pub. Acts. Ch. 785, § 4. As originally enacted, subsection (V) contained a reference to the definition of "private property" in Tenn. Code Ann. § 12-1-202. *See id.* Subsection (V) has not been amended since its enactment even though the Takings Clause in the Tennessee Constitution has long been held to be applicable to personal property. *See* Tenn. Code Ann. § 9-8-307(a)(1)(V); *Duck River Elec. Membership Corp. v. City of Manchester*, 529 S.W.2d 202, 207 (Tenn. 1975) ("[T]he constitutional prohibitions against taking private property without just compensation applies [sic] with full force and validity to personal property."). Thus, the expressed intention of the legislature has always been to define "private property" as real property or improvements to real property in the context of the Claims Commission's jurisdiction.

Further, using the doctrine of elision to remove "as defined in § 12-1-202" from Tenn. Code Ann. § 9-8-307(a)(1)(V) would expand the reach of subsection (V) and largely rewrite the statute. *See Crank*, 468 S.W.3d at 29. Expanding a statute beyond what the legislature intended is usually problematic. *See Halbert v. Shelby Cnty. Election Comm'n*, 31 S.W.3d 246, 248 (Tenn. 2000) ("In construing legislative enactments, the principal goals are to ascertain the legislative intent and give it effect without unduly restricting or expanding its coverage beyond its limited scope.). Here, expanding the scope of this statue is particularly problematic because the power to authorize suits against the state is expressly reserved for the legislature by the Tennessee Constitution. Tenn. Const. art. 1, § 17 ("Suits may be brought against the State in such manner and in such courts as the *Legislature* may by law direct." (emphasis added)). Rewriting the statute as Plaintiff suggests appears to authorize suits against the state in manner that the legislature did not direct, and we are rightfully hesitant to use the doctrine of elision in this context.

Based on the foregoing, we cannot conclude that the legislature would have enacted Tenn. Code Ann. § 9-8-307(a)(1)(V) without the clause that Plaintiff contends is unconstitutional. As a result, we cannot use the doctrine of elision to eliminate only that clause from subsection (V). *See Tester*, 879 S.W.2d at 830. Instead, if we were to apply the doctrine of elision, we would be required to eliminate subsection (V) in its entirety. *See Crank*, 468 S.W.3d at 29 (holding that application of the doctrine of elision would eliminate a statutory exemption in its entirety because the legislature would not have enacted the exemption without the allegedly unconstitutional portions).

If we were to eliminate subsection (V) entirely, Plaintiff's claims would fail. Without subsection (V), the Claims Commission would not have jurisdiction to hear any claims about the unconstitutional taking of property, whether real or personal. Plaintiff's takings claim would remain subject to dismissal for lack of subject matter jurisdiction.

Based on the foregoing, the doctrine of elision cannot be employed to give the Claims Commission jurisdiction over Plaintiff's claim.

## II. PLAINTIFF'S PROPERTY RIGHTS

Even if we were able to elide the reference to section 12-1-202 in Tenn. Code Ann. § 9-8-307(a)(1)(V), Plaintiff would not succeed because no constitutional "taking" has occurred here.[6]

The dimensions of Plaintiff's property rights are circumscribed by the fact that incarceration necessarily entails the limitation and elimination of certain rights. Although prisoners are not barred from exercising constitutional rights while incarcerated, these rights must be exercised "with due regard for the inordinately difficult undertaking that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 85 (1987)) (internal quotation marks omitted). As the U.S. Supreme Court has stated:

> [W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights. These constraints on inmates, and in some cases the complete withdrawal of certain rights, are justified by the considerations underlying our penal system. The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of institutional needs and objectives of prison facilities, chief among which is internal security. Of course, these restrictions or retractions also serve, incidentally, as reminders that, under our system of justice, deterrence and retribution are factors in addition to correction.

*Hudson v. Palmer*, 468 U.S. 517, 524 (1984) (internal citations and quotation marks omitted).

---

[6] Although Plaintiff has asserted that he is entitled to compensation under both the Takings Clause of the Fifth Amendment of the U.S. Constitution and Tenn. Const. art 1, § 21, we need not analyze these provisions separately because "no textual variances suggest that article I, section 21 should be interpreted differently than the Takings Clause of the Fifth Amendment." *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 243 (Tenn. 2014).

The right to possess personal property is one of the rights that is curtailed when a person is incarcerated. *See* Tenn. Code Ann. § 41-21-205 ("The commissioner of correction . . . has the duty and is so empowered to establish rules, regulations and procedures regarding the opening, inspecting and reading of mailable items and letters sent to or from any inmate."); Tenn. Code Ann. § 4-6-146(a) ("The commissioner of correction is authorized to permanently confiscate weapons, alcohol, controlled substances, controlled substance analogues, cash and other items that could be detrimental to institutional security or adversely affect an inmate's rehabilitation . . . ."). Recognizing this reality, courts have held that "there is a difference between the right to own property and the right to possess property while in prison" in the context of due process challenges to deprivations of property. *Searcy v. Simmons*, 299 F.3d 1220, 1229 (10th Cir. 2002) (quoting *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002)); *see Martin v. Spalding*, 988 P.2d 695, 699 (Idaho Ct. App. 1998); *Stansbury v. Hannigan*, 960 P.2d 227, 238 (Kan. 1998); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991).

Under this distinction, interference with a prisoner's right to possess personal property does not amount to a deprivation of property if the prisoner is afforded the right to maintain ownership of the property and the opportunity to exercise some control over it. *See Hatten*, 275 F.3d at 1210; *Martin*, 988 P.2d at 699 ("When an inmate is given the option of retaining ownership but sending the property out of the institution, the inmate has not lost ownership, and the loss of possession during the inmate's prison term is not a sufficient taking to implicate due process rights."). Thus, prisoners do not suffer a property deprivation for purposes of due process when their property can be sent to family members or to an address of their choosing. *See Munson v. Gaetz*, 673 F.3d 630, 638 (7th Cir. 2012) ("We also question whether Munson alleges an actual deprivation of his property given that it appears from Munson's complaint, and from his counsel's statement at oral argument, that the prison sent the interdicted books to a member of his family."); *Pryor-El v. Kelly*, 892 F. Supp. 261, 271 (D.D.C. 1995) ("Where an inmate's personal property is seized and sent to an address of his choosing, such an action is not a deprivation.").

The distinction between ownership and possession applies to prisoners' claims under the Takings Clause. *See Meis v. Houston*, 808 N.W.2d 897, 902 (Neb. Ct. App. 2012) ("[W]e believe that the same distinction between ownership and possession applies in the context of takings."); *Small v. Horn*, 722 A.2d 664, 671 (Pa. 1998) (holding that inmates' takings claims under the Pennsylvania Constitution failed because "although the prisoner no longer has possession of the property, he still retains control over it."). Consequently, depriving an inmate of the right to possess personal property does not amount to a taking if the inmate retains the right to exercise some control over the disposition of the property.

During the time he is incarcerated, Plaintiff does not have an unlimited right to have actual possession of whatever kind of personal property he wants. *See Hudson*, 468

U.S. at 524; *Meis*, 808 N.W.2d at 902-03; *Stansbury*, 960 P.2d at 238; *see also* Tenn. Code Ann. §§ 4-6-146; 41-21-205. However, he retains the right to own certain personal property. *See Meis*, 808 N.W.2d at 902-03. Consequently, the decision to prohibit Plaintiff from possessing a hotpot does not deprive him of a property right if Plaintiff retains the ability to exercise some control over the disposition of the hotpot.

According to TDOC Policy No. 504.01, TDOC is required to establish a list of approved "personal property that inmates are permitted to have *in their possession*." (emphasis added). Thus, the annual list is concerned with whether inmates may have certain property in their possession while in prison, not with whether the inmates may own it or exercise certain control over it. TDOC did not prohibit Plaintiff from owning or controlling to whom or where the hotpot could be shipped; it merely prohibited Plaintiff from maintaining possession of the hotpot after July 30, 2014.

Moreover, the warden's memo recognized the inmates' ownership interests by allowing them to choose how to dispose of the hotpots. Inmates could choose to mail the hotpots out of the institution. Inmates without sufficient funds to do so could allow NECX employees to "dispose of the item in accordance with policy." According to TDOC Policy No. 504.02, "[w]hen an inmate is in possession of property or receives personal property which is not permitted, all items shall be stored in the institution's property room . . . ." Stored property may be picked up by visitors, mailed out, or donated to a charitable organization. *See* TDOC Policy No. 504.02(VI)(A)(2)(c). Subject to certain exceptions, stored property will be "disposed of" after 30 days. *See id.*

Based on the foregoing, Plaintiff's takings claim would not be viable even if his constitutional challenge succeeded. As a result, the Commissioner did not err by dismissing Plaintiff's claim.

### IN CONCLUSION

The judgment of the commissioner is affirmed, and this matter is remanded with costs of appeal assessed against James Bates.

_____
FRANK G. CLEMENT, JR., P.J., M.S.

- 9 -